IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION; | § | |
| | § | |
| Plaintiff; | § | |
| | § | CASE NO. 4:14-cv-812 |
| v. | § | |
| | § | |
| RONALD L. BLACKBURN; ANDREW V. REID; BRUCE A. GWYN; MICHAEL A. MULSHINE; LEE C. SCHLESINGER; SAMUEL E. WHITLEY; and TREATY ENERGY CORPORATION; | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT SAMUEL E. WHITLEY'S MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Robert M. Corn
State Bar of Texas No. 04828600

The Lyric Centre
440 Louisiana Street, Suite 2000
Houston, Texas 77002-1636
Telephone:  713-229-0055
Facsimile:  713-229-0057
Email: rcorn@corn-law.com

ATTORNEY-IN-CHARGE  FOR  DEFENDANT
SAMUEL E. WHITLEY

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... ii

INDEX OF AUTHORITIES ....................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 1

ARGUMENT AND AUTHORITIES ......................................................................................... 3

    A.    Statement of Issues. .......................................................................................... 3

    B.    Applicable Law. ................................................................................................. 3

         1.    Standards governing Rule 12(b)(6) motions. .............................................. 3

         2.    Sections 5(a) and 5(c) claim elements. ....................................................... 4

         3.    Sections 5(a) and 5(c) liability standard. .................................................... 5

         4.    Aiding and abetting violation of Section 5(a) and 5(c) elements. ............... 6

    C.    The Commission Fails to State a Claim Based on Whitley's Opinion Letters Concerning Removal of a Restrictive Legend Upon Re-sales of Shares ..................... 7

    D.    The Commission Fails to State a Claim Based on Whitley's Opinion Letter Concerning Ronald Blackburn's Shares. ....................................................... 10

    E.    The Commission Fails to State a Claim Based on Whitley's Opinion Letters Concerning S-8 Shares. ........................................................................... 14

         1.    Letter to UBS Financial Services. ........................................................... 14

         2.    Letters regarding Treaty's stock benefit plan. .......................................... 15

CONCLUSION ............................................................................................................................ 16

PRAYER ....................................................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................................. 18

APPENDIX ................................................................................................................................... 19

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F.Supp.2d 707, 719 (E.D. Ky. 2009) ................................................................................................................11, 12

*Akin v. Q-L Invest, Inc.*, 959 F.2d 521, 532 (5th Cir. 1992) .................................................7

*Allison v. Ticor Title Ins. Co.*, 907 F.2d 645, 648 (7th Cir. 1990).......................................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ..................3

*Austin Lake Estates Recreation Club, Inc. v. Maberry*, 638 S.W.2d 649, 650 (Tex.App.-- Austin 1982, writ ref'd n.r.e.) ........................................................................................10, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).........................................................................................................................3

*Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27, 48 (Del. 2006) ...........11

*Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) .................................................4

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).......................................................4

*Croy v. Campbell*, 624 F.2d 709, 711 (5th Cir. 1980) .......................................................5

*Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) ....................................................4

*Dennis v. General Imaging, Inc.*, 918 F.2d 496, 508 (5th Cir. 1990)......................................6

*Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998) .........................................................................................................5

*FDIC v. Hurwitz*, 384 F.Supp.2d 1039, 1076 (S.D. Tex. 2005), *rev'd in part and remanded*, *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 577-579 (5th Cir. 2008) .........................12

*Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1998).........................................................4

*Franco-Texan Land Co. v. Laigle*, 59 Tex. 339, 344 (1883) ..........................................11

*Hoggett v. Brown*, 971 S.W.2d 472, 484 n. 7 (Tex.App.--Houston [14th Dist.] 1997, pet. denied) ..........................................................................................................11

*In re Amereco Derivative Litig.*, 252 P.3d 681, 697 (Nev. 2011).................................11

*In re NAAC Securities*, 513 F. Supp. 608, 619-620 (N.D. Ga. 1981) ..............................6

*In Re: Tetra Technologies, Inc. Sec. Litig.*, No. 4:08-cv-0965, 2009 U.S. Dist. LEXIS 126687 *7 (S.D. Tex. July 9, 2009)................................................................4

*John Hallal v. Vicis Capital Master Fund Ltd*, No. 12-10166, 2013 U.S. Dist. LEXIS 39449 at *53-54, 2013 WL 1192384 (D. Mass. Feb. 25, 2013), *magistrate's report and recommendation accepted and adopted*, 2013 U.S. Dist. LEXIS 39896 (D. Mass. Mar. 19, 2013).........................................................................................................11, 12

*Manning v. Harlan*, 122 S.W.2d 704, 708 (Tex.Civ.App.--El Paso 1938, writ dism'd)..............11

*Pharo* v. *Smith,* 621 F.2d 656, 667 and n.8 (5th Cir.1980)................................................5

*Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L. Ed. 2d 658 (1988) ......................................5

*SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004);....................................................5

*SEC v. Cavanagh,* 1 F.Supp. 2d 337, 364-365 (S.D.N.Y. 1998)................................9

*SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998) ......................................4

*SEC v. Cavanagh*, 445 F.3d 105, 111-113 (2d Cir. 2006)................................5, 8, 9, 10

*SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974), *cert. denied*, 420 U.S. 908, 42 L.Ed. 2d 837, 95 S.Ct. 826 (1975)..........................................................................6

*SEC v. Connectajet.com, Inc.*, No. 3:09-CV-1742-B, 2010 U.S. Dist. LEXIS 61213 at *9 (N.D. Tex. June 17, 2010) ........................................................................5

*SEC v. Continental Tobacco Co. of South Carolina*, 463 F.2d 137, 155 (5th Cir. 1972)................4

*SEC v. Culpepper*, 270 F.2d 241, 247 (2d Cir. 1959)....................................................8

*SEC v. Fisher*, 2008 U.S. Dist. LEXIS 58477 (E.D. Mich. Aug. 1, 2008)......................6

*SEC v. Friendly Power Co.*, 49 F.Supp.2d 1363, 1371 (S.D. Fla. 1999) ......................5

*SEC v. Funding Resource Group*, 2001 U.S. Dist. LEXIS 12042 at *18-19 (N.D. Tex. July 27, 2001) ........................................................................4

*SEC v. Gann*, 2006 U.S. Dist. LEXIS 9955 at *21-22 (N.D. Tex. Mar. 13, 2006) ........................6

*SEC v. Holschuh*, 694 F.2d 130, 139-40 (7th Cir. 1982)................................................5

*SEC v. Kern*, 425 F.3d 143, 148 (2d Cir. 2005)................................................8, 10

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ............................................................5, 8

*SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007) .......................................................5, 8

*SEC v. Sierra Brokerage Services*, 608 F.Supp.2d 923, 939 (S.D. Ohio 2009) ............................5

*Select Portfolio Servicing, Inc. v. Evaluation Solutions, LLC*, No. 3:06-cv-582-J-33MMH, 2006 U.S. Dist. LEXIS 67276 at *18-19 (M.D. Fla. Sept. 20, 2006)..................11, 12

*Swenson v. Engelstad*, 626 F.2d 421, 424-25 (5th Cir. 1980) ...........................................4

*Symetra Life Ins. Co. v. Rapid Settlements*, 612 F.Supp.2d at 771 ...................................4

*United States v. Wolfson*, 405 F.2d 779, 782 (2d Cir. 1968) ...........................................8

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) ....................4

*Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94-95 (5th Cir. 1975) .......................................6

*Wright* v. *Schock,* 571 F.Supp. 642, 657-58 (N.D. Cal. 1983) ........................................5

**Statutes**
Securities Exchange Act of 1934 § 13, 15 U.S.C. § 78m ................................................ 8

Securities Exchange Act of 1934 § 15(d), 15 U.S.C. § 78o(d)........................................ 8

Securities Act of 1933 § 2(4), 15 U.S.C. § 77b(4).................................................... 8

Securities Act of 1933 § 2(11), 15 U.S.C. § 77b(11)................................................. 8

Securities Act of 1933 § 4a(1), 15 U.S.C. § 77d(a)(1) ............................................... 7

Securities Act of 1933 §§ 5(a), 5(c), 15 U.S.C. §§ 77e(a), 77e(c)................. 1, 4, 5, 6, 7, 8, 10, 14

Securities Act of 1933 § 12, 15 U.S.C. § 77l.......................................................... 5

**Rules**
Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 3

Securities and Exchange Commission Rule 144, 17 C.F.R. § 230.144................................ 2, 7, 10

Securities and Exchange Commission Rule 405, 17 C.F.R. § 230.405........................................ 10

**Treatises**

2 W. Fletcher, *Fletcher Cyclopedia on the Law of Private Corporations* § 385 (rev. 1982)
.............................................................................................................................11


**Other Authorities**

Eddy J. Rogers, Jr. & Jason Weeden, *Resales of Securities Under the Securities Act*, 1012
PLI/Corp. 285, 287 (Sept. 1997) ......................................................................5

Sidney Ravkind, *We New Wizards of Wall Street*, 66 Tex. B.J. 120, 126 n.32 (2003) ................10

Louis Loss & Joel Seligman, *Fundamentals of Securities Regulation* 353-54 (3d ed.
1995)....................................................................................................5, 8

*The Review of Securities & Commodities Regulation* (Vol. 46 No. 16)........................................7

Securities and Exchange Commission 2008 Adopting Release n.65 .............................................7

**DEFENDANT SAMUEL E. WHITLEY'S MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Samuel E. Whitley ("Whitley"), a Defendant in the above entitled and numbered cause, and, pursuant to FED. R. CIV. P. 12(b)(6), files this Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, and in support thereof would respectfully show the Court as follows:

**PRELIMINARY STATEMENT**

The United States Securities and Exchange Commission (the "Commission"), as plaintiff, purports to allege claims against Whitley, a lawyer, for violation, and aiding and abetting violation, of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. § 77e (a), (c), which prohibits the sale of unregistered securities.  The Commission's complaint, however, does not allege sufficient facts showing that Whitley was a necessary participant or substantial factor in or that he knowingly and substantially assisted in any impermissible sale of unregistered shares and the Complaint therefore fails to state a claim against Whitley upon which relief can be granted.

**FACTUAL BACKGROUND**

On December 15, 2014, the Commission filed its original Complaint purporting to allege causes of action against Whitley, a lawyer who served as outside counsel to Treaty Energy Corporation ("Treaty"), and other defendants for violation of federal securities laws.  The Commission purports to allege claims against Whitley for violation of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. § 77e (a), (c), and for aiding and abetting violation of Sections 5(a) and 5(c) by all other Defendants.  [Complaint ¶¶ 84-89].[1]  The Commission seeks to enjoin Whitley from violating and from aiding and abetting violation of Sections 5(a) and 5(c)

1

[Complaint at VI(a), (b)], from providing legal services in connection with offers or sales of securities claiming exemption from registration requirements of the Securities Act [Complaint at VI(i)(1)] and from providing legal services in connection with filing Form S-8 with the Commission [Complaint at VI(i)(2)].  The Commission also seeks disgorgement and imposition of a civil monetary penalty.  [Complaint at VI (j), (k)].

The Commission's claims against Whitley are based on three types of occurrences: (i) that Whitley prepared numerous opinion letters that led to the removal of a restrictive legend on certain Treaty share certificates without a registration statement being filed or in effect [Complaint ¶¶ 51-53]; (ii) that Whitley authored and transmitted a letter to Treaty's stock transfer agent advising that certain shares of stock owned by Ronald Blackburn could be transferred without restrictions pursuant to Rule 144(b)(1), 17 C.F.R. § 230.144(b), because Blackburn was not an affiliate of Treaty [Complaint ¶¶ 61-64]; and (iii) that Whitley prepared an opinion letter to UBS Financial Services, Inc. affirming that 487,805 shares of Treaty stock were issued in exchange for business consulting services pursuant to Treaty's registration statement on Form S-8 (Stock Benefit Plan) and two opinion letters filed with the Commission stating that shares registered under Treaty's 2012 and 2013 Forms S-8 would be legally issued, fully paid and non-assessable [Complaint ¶¶ 69-70].

Whitley asserts the Commission's complaint does not allege sufficient facts showing that he was a necessary participant or substantial factor in or that he knowingly and substantially assisted in any impermissible sale of unregistered shares and the Complaint therefore fails to state a claim against him upon which relief can be granted.

---

[1]   Significantly, the Commission does not allege that Whitley violated or aided and abetted violation of, or participated in any scheme to violate, any other securities laws.

## ARGUMENT AND AUTHORITIES

**A.    Statement of Issues.**

The issue presented by this motion is whether the Commission has failed to state a claim upon which relief can be granted.

**B.    Applicable Law.**

**1.    Standards governing Rule 12(b)(6) motions.**

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).  The factual content must be enough to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.  A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65.  Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *Symetra Life Ins. Co. v. Rapid Settlements*, 612 F.Supp.2d 759, 771 (S.D. Tex. 2007).

In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the contents of the pleadings, except that the court may consider documents attached to the defendant's

motion to dismiss if such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Scanlan v. Tex. A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003); *Symetra Life Ins. Co. v. Rapid Settlements*, 612 F.Supp.2d at 771; *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993); *Field v. Trump,* 850 F.2d 938, 949 (2d Cir. 1998). The Court may also take notice of matters of public record when considering a Rule 12(b)(6) motion. *In Re: Tetra Technologies, Inc. Sec. Litig.*, No. 4:08-cv-0965, 2009 U.S. Dist. LEXIS 126687 *7 (S.D. Tex. July 9, 2009)(Court may rely on SEC filings for what they say); *see also Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

**2.      Sections 5(a) and 5(c) claim elements.**

Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c), require that securities be registered[2] with the SEC before any person may sell or offer to sell such securities. In order to establish a *prima facie* case under this statute, the Commission must prove: (1) the sale or offer to sell securities; (2) the absence of a registration statement covering those securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer. *Swenson v. Engelstad*, 626 F.2d 421, 424-25 (5th Cir. 1980); *SEC v. Continental Tobacco Co. of South Carolina*, 463 F.2d 137, 155 (5th Cir. 1972); *SEC v. Funding Resource Group*, 2001 U.S. Dist. LEXIS 12042 at *18-19 (N.D. Tex. July 27, 2001); *see also*

---

[2]      A registration statement is transaction-specific and permits an issuer, or other persons, to make only the offers and sales described in the registration statement. *SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998); *Allison v. Ticor Title Ins. Co.*, 907 F.2d 645, 648 (7th Cir. 1990). "It is really the offering or sale of the particular security that is registered and not the security itself -- that is, once a security has been sold pursuant to a registration statement, subsequent sales are not themselves sales for which a registration statement is in effect. Each sale of a security, then, must either be made pursuant to a registration statement or fall under a registration exemption." *SEC v. Cavanagh*, 155 F.3d at 133 (citing Eddy J. Rogers, Jr. & Jason Weeden, *Resales of Securities Under the Securities Act*, 1012 PLI/Corp. 285, 287 (Sept. 1997). *See also* Louis Loss & Joel Seligman, *Fundamentals of Securities Regulation* 353-54 (3d ed. 1995)(explaining that "though in form an issuer registers its *securities*, in substance it registers *offerings*--or more precisely, perhaps, securities with respect to specified offerings")).

*Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998); *SEC v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006).

3.      **Sections 5(a) and 5(c) liability standard.**

Liability for violation of Sections 5(a) and 5(c) attaches if the defendant was a "necessary participant" or a "substantial factor" in the transaction.  *See, e.g., SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004); *SEC v. Holschuh*, 694 F.2d 130, 139-40 (7th Cir. 1982); *SEC v. Murphy*, 626 F.2d 633, 649-52 (9th Cir. 1980); *SEC v. Friendly Power Co.*, 49 F.Supp.2d 1363, 1371 (S.D. Fla. 1999); *SEC v. Sierra Brokerage Services*, 608 F.Supp.2d 923, 939 (S.D. Ohio 2009); *SEC v. Connectajet.com, Inc.*, No. 3:09-CV-1742-B, 2010 U.S. Dist. LEXIS 61213 at *9 (N.D. Tex. June 17, 2010).  The "necessary participant" or "substantial factor" cases are fact specific and case law has developed interpreting the substantial factor/necessary participant test under both Section 5 and Section 12 of the Securities Act of 1933 (before the Supreme Court devised a different test for Section 12).[3]  Under this test, "but for" causation is generally insufficient. *Pinter* v. *Dahl,* 486 U.S. 622, 650 n.25 (1988)(discussing authorities equating substantial factor to proximate cause); *Pharo* v. *Smith,* 621 F.2d 656, 667 and n.8 (5th Cir.1980)(recognizing that "[m]ere participation in the events leading up to the transaction is not enough" and referencing authority that the participation must be of the nature of an "integral role in the fraud charged);" *Wright* v. *Schock,* 571 F.Supp. 642, 657-58 (N.D. Cal. 1983)(Banks and title companies that provided routine services "may have been 'but-for' causes" of sales, but they could not be liable as "substantial factors in such sales").  Examples of application of the test to attorneys include *Croy v. Campbell*, 624 F.2d 709, 711 (5th Cir. 1980)(Attorney who introduced purchaser to

---

[3]      *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L. Ed. 2d 658 (1988) rejected this standard for a private cause of action brought under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, for violation of Section 5. The court in *SEC v. Phan*, 500 F.3d 895, 906 n.13 (9th Cir. 2007) held the standard still applied to an SEC action because of differences in statutory language.

5

seller, opined that this was the "best investment so far as a tax shelter" that he had ever seen, and provided and reviewed seller's brochure with purchasers was not "substantial factor"); *In re NAAC Securities*, 513 F. Supp. 608, 619-620 (N.D. Ga. 1981)(Law firm that advised issuer that intrastate exemption was applicable and available and advised issuer to continue to sell notes in a period of financial instability was not a substantial factor in sales); *SEC v. Fisher*, 2008 U.S. Dist. LEXIS 58477 (E.D. Mich. Aug. 1, 2008)(Attorney who, acting as a strawman, established corporation and signed subscription agreements and promissory notes from corporation that purported to provide consideration for purchase from issuer when attorney's corporation had no assets and, therefore, no means to repay the notes was sufficiently involved for liability).

    **4.**    **Aiding and abetting violation of Section 5(a) and 5(c) elements.**

In the Fifth Circuit, the elements of aiding and abetting a securities law violation are: (1) the existence of a predicate violation of the securities laws by the primary party; (2) knowledge of the violation by the person charged; and (3) substantial assistance by the person charged in aiding and abetting the violation.  *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 508 (5th Cir. 1990); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94-95 (5th Cir. 1975); *SEC v. Gann*, 2006 U.S. Dist. LEXIS 9955 at *21-22 (N.D. Tex. Mar. 13, 2006); *see also SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974), *cert. denied*, 420 U.S. 908, 42 L.Ed. 2d 837, 95 S.Ct. 826 (1975).  The Fifth Circuit's formulation of aiding and abetting elements in *Woodward* is grounded in the analysis of *SEC v. Coffey* and specifically requires that the person charged knowingly and substantially assisted the violation.  *Woodward v. Metro Bank of Dallas*, 522 F.2d at 94-95; *SEC v. Coffey*, 493 F.2d at 1316.  The complaint must sufficiently allege these elements.  *SEC v. Gann*, 2006 U.S. Dist. LEXIS 9955 at *21-22 (N.D. Tex. Mar. 13, 2006).  There is no basis for imposing on an alleged aider

and abettor the burden of establishing eligibility for an exemption from registration.  *Akin v. Q-L Invest, Inc.*, 959 F.2d 521, 532 (5th Cir. 1992).

**C.      The Commission Fails to State a Claim Based on Whitley's Opinion Letters Concerning Removal of a Restrictive Legend Upon Re-sales of Shares.**

The Commission alleges Whitley prepared numerous opinion letters that led to the removal of a restrictive legend on certain Treaty share certificates without a registration statement being filed or in effect.  [Complaint ¶¶ 51-53].  The Commission alleges the letters were written in connection with Treaty's alleged issuance of shares to prospective investors "lured" to the company and attempts to suggest that Whitley failed to perform various tasks in connection with preparation of such letters.    [Complaint ¶¶ 51-53].    Significantly, the Commission does not allege that these letters contained incorrect opinions.

The Commission's allegations concerning these opinion letters appear to be intentionally vague and misleading.    In reality, Whitley's opinion letters regarding the removal of the restrictive legend from certain specific share certificates were prepared randomly at the instance and request of individual shareholders who had already owned their shares for the requisite period of time.[4]  These letters express an opinion as to whether the shares are eligible for ***re-sale*** under the "safe harbor" provisions of SEC Rule 144, 17 C.F.R. § 230.144 (2007).[5]  Attached

---

[4]      Consistent with the customary practice in the industry, if a Treaty shareholder inquired of Treaty concerning an opinion for a proposed re-sale of shares, Treaty referred the shareholder to Whitley.  If the shareholder elected to proceed in that fashion, he or she would then need to engage Whitley and pay Whitley's fees for the services rendered.  It is also customary for an issuer's transfer agent to request an opinion from the company's securities counsel prior to removing a restrictive legend from a stock certificate.  In this regard, the attorney is acting as the issuer's attorney.  *See The Review of Securities & Commodities Regulation* (Vol. 46 No. 16) ("Transfer agents will typically remove such a legend upon an opinion of issuer's counsel that the resale is exempt from the Rule 144 holding period, notice, and manner of sale requirements (and sometimes a concurrence letter from the company," citing SEC 2008 Adopting Release n.65 "[W]e do not object if issuers remove restrictive legends from securities held by non-affiliates after all of the applicable conditions in Rule 144 are satisfied.").

[5]      Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c), require that securities be registered with the SEC before any person may sell or offer to sell such securities.  Section 4(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77d(a)(1), provides that the registration requirements of Section 5 do not apply to "transactions by any person other than an *issuer*, *underwriter*, or *dealer*."  [Emphasis added].  This exemption exists primarily to allow ordinary re-sales between independent parties of securities already issued.  *SEC v.*

hereto as Exhibit "1" is a true and correct copy of an example of one of these Rule 144 letters. The relevant issues for issuance of such letters are (i) whether the issuer is a reporting company under Section 13 or 15(d) of the Securities Exchange Act of 1934; (ii) whether the shareholder has held the shares for at least six months; and (iii) whether the shareholder has not been an affiliate of the issuer for at least three months prior to the sale.  If the foregoing requirements are met, the shares are exempt from registration by virtue of the exemption set forth in Section 4(1) of the Securities Act of 1933.  As the letter attached as Exhibit "1" shows, Whitley did not express opinions on other issues and, in particular, did not express opinions on sales or issuances of shares by Treaty.  The proposed selling shareholder either satisfied the requisite holding period or not, and was either an affiliate or not.  These are the only inquiries required by Rule

---

*Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006); *SEC v. Culpepper*, 270 F.2d 241, 247 (2d Cir. 1959); *SEC v. Murphy*, 626 F.2d 633, 648 (9th Cir. 1980)("Section 4(1) was designed to exempt routine trading transactions with respect to securities already issued."); *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007); 1 Louis Loss *et al.*, *Securities Regulation* 591 (4th ed. 2006)(explaining that § 4(1) exempts an unregistered resale of blue-chip stock between friends from violating § 5).

The term "*issuer*" is defined in Section 2 of the Securities Act of 1933, 15 U.S.C. § 77b(4), in relevant part to mean "every person who issues or proposes to issue any security."

The term "*underwriter*" and the term "*issuer*" as it relates thereto are defined in Section 2 of the Securities Act of 1933, 15 U.S.C. § 77b(11) as follows:

> The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking . . . . As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

*see also SEC v. Cavanagh*, 445 F.3d at 111; *United States v. Wolfson*, 405 F.2d 779, 782 (2d Cir. 1968).

To aid in the interpretation of the term "*underwriter*," and the term "*issuer*" as it relates thereto, and to provide greater security to issuers and investors, the SEC promulgated Rule 144, which creates a "safe harbor" by identifying certain conditions under which a person will be deemed to be not a statutory "underwriter."  17 C.F.R. § 230.144(b); *see also SEC v. Kern*, 425 F.3d 143, 148 (2d Cir. 2005)(interpreting predecessor Rule 144(k)).  In general, Rule 144(b) provides that a person who is not an affiliate of the issuer, and has not been an affiliate during the past three months, shall be deemed not to be an underwriter if the issuer meets certain Exchange Act reporting requirements and at least six (6) months has elapsed since the date of acquisition of the shares.

144, which was the basis of Whitley's opinions.  Therefore, none of the other matters relating to Treaty's issuances are relevant to Whitley's Rule 144 opinions.

In the present case, the Commission does not allege that Whitley made any misrepresentation, false statement or erroneous conclusion in any of the Rule 144 letters.  The Commission does not identify a single shareholder or share of stock on which Whitley opined that was issued in violation of the law.[6]  The Commission alleges no specific facts and circumstances constituting improper issuance of shares by Treaty that Whitley knew of or how any such facts or circumstances are relevant to or caused the Rule 144 opinions Whitley prepared regarding shares held by individual shareholders to be faulty.  The Commission has not identified a single shareholder for whom Whitley wrote a Rule 144 letter where there was any impropriety in the shareholder's acquisition of the shares, how that circumstance was relevant to the opinion rendered, that Whitley knew of any such facts and that Whitley breached some standard of care with regard thereto.  The Commission does not allege that Whitley provided any assistance to Treaty in conducting any offering of unregistered stock, nor does the Commission allege any facts showing that Whitley participated in an integrated offering.[7]

As a result of the foregoing, the Commission's allegations, amounting in sum and substance to merely the assertion that Whitley authored Rule 144 opinion letters with regard to re-sales of shares by individual, eligible shareholders, fail to plausibly allege facts that make Whitley a "necessary participant" or a "substantial factor" in any offering of unregistered stock by Treaty or any non-exempt sale of unregistered shares.  Nor do these allegations plausibly

---

[6]    Except for Ronald Blackburn, which is addressed in the following section of this motion.

[7]    Integrated offerings have been found where the transactions are so interconnected that one would not have happened without the other and where the transactions were clearly part of a single plan of financing with the same general purpose, such as providing management shareholders with a desired return.  *See SEC v. Cavanagh*, 1 F.Supp. 2d 337, 364-365 (S.D.N.Y. 1998); *SEC v. Cavanagh*, 445 F.3d 105, 112-113 (2d Cir. 2006).  The doctrine has been applied to deny exemption to those who structured or planned the transactions.  *Id.*  No facts making the existence of an integrated offering plausible have been alleged in the present case.

allege facts showing that Whitley "knowingly and substantially assisted" in any such offering or sale. The Commission's allegations regarding the Rule 144 letters therefore fail to state a claim for violation of Sections 5(a) and 5(c) of the Securities Act of 1933.

**D. The Commission Fails to State a Claim Based on Whitley's Opinion Letter Concerning Ronald Blackburn's Shares.**

The Commission alleges Whitley made false statements in a letter transmitted to Treaty's stock transfer agent advising that certain shares of stock owned by Ronald Blackburn could be transferred without restrictions pursuant to Rule 144(b)(1), 17 C.F.R. § 230.144(b), because Blackburn was not an affiliate[8] of and did not control Treaty.[9] [Complaint ¶¶ 61-64]. The Commission alleges such statements were false because Blackburn was a *de facto* officer of Treaty. [Complaint ¶¶ 61-64]. The Commission alleges no other fault in the opinion.[10] Thus, the viability of this claim depends on whether the Commission's allegation that Blackburn was a *de facto* officer of Treaty is sufficient to state a claim against Whitley. Whitley submits the allegation is insufficient because the *de facto* officer legal doctrine has no application here and because the Commission alleges no specific conduct by Whitley with respect thereto.

Under Texas law, a *de facto* officer is defined as one who has colorable right to the office, although he has no legal right thereto by reason of some informality or irregularity in his election or appointment. *Austin Lake Estates Recreation Club, Inc. v. Maberry*, 638 S.W.2d 649,

---

[8]    An "affiliate" of an issuer is defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." 17 C.F.R. §§ 230.144(a)(1). "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person whether through the ownership of voting securities, by contract, or otherwise." Rule 405, 17 C.F.R. § 230.405; *see also SEC v. Kern*, 425 F.3d at 149-150. Although there is no bright-line rule declaring how much stock ownership constitutes "control" and makes one an "affiliate," some commentators have suggested that ownership of something between ten and twenty percent is enough, especially if other factors suggest actual control. *See* Sidney Ravkind, *We New Wizards of Wall Street*, 66 Tex. B.J. 120, 126 n.32 (2003) (reviewing cases and literature); *SEC v. Cavanagh*, 445 F.3d at 114 n.19.

[9]    A true and correct copy of the letter referred to in the Complaint is attached hereto as Exhibit "2."

[10]    To the extent the Commission attempts to allege other matters concerning Blackburn's activities as a consultant to Treaty, they do not sufficiently allege any other basis of control since they do not plead facts known to Whitley showing that Blackburn possessed the power to direct the management and policies of Treaty.

650 (Tex.App.--Austin 1982, writ ref'd n.r.e.); *Franco-Texan Land Co. v. Laigle*, 59 Tex. 339, 344 (1883).  The Supreme Court elaborated further that:

> A *de facto* authority cannot arise when there has been absolutely no election or appointment, or, what is equivalent, one that is absolutely null and void, and not merely irregular or informal; and where there has been no assertion of the right to exercise the office except in the very instance where it is questioned; and where there has been no acquiescence in the official acts of the person claiming such authority, either on the part of the body for whom he professes to act, or of any one else.  Otherwise the simple bold assertion of a right to an office would bind such corporation or body by the acts of the usurper, and parties suffering from his unlawful acts could never question them.

*Id*.  Furthermore, the *de facto* officer doctrine applies only to third parties who deal with the corporation and are unaware of the *de facto* officer's true status.  *Hoggett v. Brown,* 971 S.W.2d 472, 484 n. 7 (Tex.App.--Houston [14[th] Dist.] 1997, pet. denied); *Austin Lake Estates Recreation Club, Inc. v. Maberry*, 638 S.W.2d at 650; 2 W. Fletcher, *Fletcher Cyclopedia on the Law of Private Corporations* § 385 (rev. 1982); *cf. Manning v. Harlan*, 122 S.W.2d 704, 708 (Tex.Civ.App.--El Paso 1938, writ dism'd) (authority of a *de facto* public official).

Under Delaware[11] law, a *de facto* officer has been defined as one who "assumes possession of an office under the claim and color of an election or appointment and who is actually discharging the duties of that office, but for some legal reason lacks de jure legal title to that office."  *Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27, 48 (Del. 2006); *see also John Hallal v. Vicis Capital Master Fund Ltd*, No. 12-10166, 2013 U.S. Dist. LEXIS 39449 at *53-54, 2013 WL 1192384 (D. Mass. Feb. 25, 2013), *magistrate's report and recommendation accepted and adopted*, 2013 U.S. Dist. LEXIS 39896 (D. Mass. Mar. 19, 2013); *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F.Supp.2d 707, 719 (E.D. Ky. 2009); *Select Portfolio Servicing, Inc. v. Evaluation Solutions, LLC*, No. 3:06-cv-582-J-33MMH, 2006

---

[11]    Treaty is a Nevada corporation.  Nevada looks to Delaware law in corporate matters.  *In re Amereco Derivative Litig.*, 252 P.3d 681, 697 (Nev. 2011).

U.S. Dist. LEXIS 67276 at *18-19 (M.D. Fla. Sept. 20, 2006).  Thus, the corporation must take some action that looks like a formal appointment or election, and the apparent officer must actually exercise the duties of the office.  *Select Portfolio Servicing, Inc. v. Evaluation Solutions, LLC*, No. 3:06-cv-582-J-33MMH, 2006 U.S. Dist. LEXIS 67276 at *18-19 (M.D. Fla. Sept. 20, 2006).

In the present case, the Commission has alleged no facts supporting the proposition that Blackburn assumed any Treaty office under the claim and color of an election or appointment; that Blackburn was actually discharging the duties of any Treaty office; or that there is merely some legal reason why Blackburn lacks legal title to a Treaty office.  The Commission alleges no facts showing that Treaty ever took any action to appoint or elect Blackburn to an office or that Blackburn exercised the duties of any particular Treaty office.   Absent such allegations, a complaint that one is a *de facto* officer fails to state a claim.  *John Hallal v. Vicis Capital Master Fund Ltd*, No. 12-10166, 2013 U.S. Dist. LEXIS 39449 at *53-54, 2013 WL 1192384 (D. Mass. Feb. 25, 2013), *magistrate's report and recommendation accepted and adopted*, 2013 U.S. Dist. LEXIS 39896 (D. Mass. Mar. 19, 2013); *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F.Supp.2d 707, 719 (E.D. Ky. 2009).[12]

---

[12]   In *FDIC v. Hurwitz*, 384 F.Supp.2d 1039, 1076 (S.D. Tex. 2005), *rev'd in part and remanded*, *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 577-579 (5th Cir. 2008), the FDIC, as plaintiff, brought claims against Hurwitz alleging, among other things, that he was liable as a *de facto* officer.  The district court sanctioned the FDIC more than $72 million for, among other things, alleging claims grounded upon the *de facto* officer doctrine when it knew the doctrine was legally inapplicable.  On appeal, the Fifth Circuit reversed, holding, among other things, that it was not sanctionable to make such an allegation as a broad principle rather than in reliance on the actual legal doctrine.  While the *Hurwitz* case illustrates the *de facto* officer legal doctrine, it is distinguishable from the present case on several bases.  First, in *Hurwitz*, the doctrine was asserted against the party alleged to be the *de facto* officer rather than against a third party outside counsel, such as Whitley, who is alleged to have erred in failing to apply such legal doctrine in the context of preparation of a Rule 144 letter.  Second, the *Hurwitz* court never held that the allegations stated a claim against a third party such as Whitley.  Third, and importantly, the Commission here purports to allege the inapplicable *de facto* officer legal doctrine as grounds for its claim against Whitley and makes no assertion that it intends to allege only the broad principle like the FDIC argued in *Hurwitz* to avoid sanctions.

Moreover, the Commission has alleged no facts showing it is a party to whom the *de facto* officer doctrine applies.  Nor has it alleged facts showing it is a third party who dealt with Treaty and was unaware of Blackburn's true status.  Indeed, by virtue of Treaty's public filings with the Commission's office, the Commission, like the general public, is charged with knowledge of the identity of Treaty's officers and directors.  Treaty's public filings show that Blackburn was never elected or appointed to be an officer or director of Treaty and that others were appointed or elected to those positions and were serving in such positions to the exclusion of Blackburn.[13]

Finally, the Commission has alleged no facts showing that Whitley participated in any way in Blackburn being an alleged *de facto* officer.  In this regard, the Commission alleges no facts showing that Whitley engaged in any conduct to aid or assist Blackburn in obtaining, retaining or exercising the alleged *de facto* position.

Given the inapplicability of the *de facto* officer doctrine to the circumstances of this case and the absence of allegations of specific conduct by Whitley with respect thereto, the Commission's allegations are no more than labels, conclusions and formulaic recitations that are too vague and general to state a claim against an outside lawyer such as Whitley for violation of Section 5.  The complaint ignores the generally accepted concepts for determining the identity of underwriters, affiliates, and those having control under the safe harbor provisions of Rule 144(b) and purports to allege a claim against Whitley by asserting, in conclusory fashion, a different, legally inapplicable, ill-defined and inherently unknowable concept.  The complaint seeks to hold Whitley to an impossible and unknown standard for determining the identity of the issuer's

---

[13]   True and correct copies of Treaty's Forms 10-K filed with the Commission for the years ended December 31, 2009, 2010, 2011 and 2012 are attached hereto as Exhibits "3," "4," "5" and "6," respectively.  The Court is requested to take notice of these public records, including the issuer's disclosures of the identity of its officers and directors at Exhibit "3" at p. 35-36, Exhibit "4" at p. 40-41, Exhibit "5" at p. 52-53 and Exhibit "6" at p. 62-63.

officers.  For these reasons, the Commission's allegation that Whitley authored the February 14, 2013 letter advising that Blackburn's re-sale of shares meets the conditions of Rule 144 fails to plausibly allege facts that, under applicable law, state a claim for violation of, or aiding or abetting a violation of, Sections 5(a) or 5(c) of the Securities Act of 1933.

**E.**     **The Commission Fails to State a Claim Based on Whitley's Opinion Letters Concerning S-8 Shares.**

**1.**     **Letter to UBS Financial Services.**

The Commission alleges that Whitley prepared an opinion letter to UBS Financial Services, Inc. affirming that 487,805 shares of Treaty stock were issued in exchange for business consulting services pursuant to Treaty's registration statement on Form S-8 (Stock Benefit Plan). [Complaint ¶¶ 67-69].  The Commission alleges such opinion was false because Whitley had relied on a stock award agreement indicating the shares were issued to satisfy a debt Treaty owed to the shareholder, an impermissible use of shares registered under Form S-8.  [Complaint ¶¶ 67-69].  The Commission's allegations regarding this letter are, once again, misleading.  Attached hereto as Exhibit "7" is a true and correct copy of the opinion letter at issue together with the agreement referenced therein at page 2, paragraph 8.  These documents demonstrate that the information and records provided to Whitley show that the shares were properly issued for services rendered, and not to satisfy a debt Treaty owed to the shareholder.  These documents also show that whatever agreement the Commission is referencing in the complaint, it is not the one that is the subject of Whitley's letter.  Under these circumstances, Plaintiff's allegations grounded upon the letter to UBS Financial Services fail to state a claim for violation of, or aiding or abetting the violation of, Sections 5(a) or 5(c).

2.      **Letters regarding Treaty's stock benefit plan.**

The Commission also alleges that Whitley provided "necessary legal opinions" for Treaty to improperly issue Form S-8 shares for cash and commissions instead for services, as required. [Complaint ¶ 70]. The Commission alleges Whitley did this by opining that shares registered under Treaty's 2012 and 2013 Forms S-8 (stock benefit plan) would be legally issued, fully paid and non-assessable. [Complaint ¶ 70]. The Commission once again misstates the nature of the opinions expressed.

The letters referred to in the Commission's Complaint contained opinions only as to Treaty's stock benefit plan itself, not as to specific share issuances or transactions. On August 23, 2012, Whitley issued an opinion to Treaty's board of directors regarding Treaty's 2011 Stock Benefit Plan, as amended (the "Plan"). The opinion was made an exhibit to Treaty's Form S-8 filed with the Commission on August 24, 2012. A true and correct copy of the August 23, 2012 letter is attached hereto as Exhibit "8." On February 20, 2013, Whitley issued a similar letter that was made an exhibit to Treaty's Form S-8 filed with the Commission on February 21, 2013. A true and correct copy of that letter is attached hereto as Exhibit "9." In relevant part, each letter stated:

> …we are of the opinion that the Shares issued pursuant to the Plan have been duly authorized pursuant to the Nevada General Corporation Law and, when issued and delivered in accordance with the terms of the Plan, will be legally issued, fully paid and nonassessable.
>
> This opinion speaks only at and as of the date above and is based solely on the facts and circumstances known to us as of such date. In addition, in rendering this opinion, we assume no obligation to revise, update or supplement this opinion in response to any subsequent factual or legal developments.

Thus, the statements contained in the letters are limited to opining that shares issued pursuant to the Plan are authorized under Nevada law and, when issued and delivered in accordance with the

terms of the Plan, will be fully paid and nonassessable.[14]   The opinions were given only as to shares issued *pursuant to the Plan* and *in accordance with the terms of the Plan*.   No other opinion is expressed.   Significantly, Whitley did not opine in either letter that any particular shares or transaction qualified for issuance under the Plan or complied with federal securities laws.   By their terms, Whitley's August 23, 2012 and February 20, 2013 letters deal only with Nevada corporate law issues.   These letters simply do not cover or apply to shares that have not been properly issued pursuant to the terms of the Plan, nor do they, under any circumstances, express any opinion concerning any specific transactions or share issuances alleged by the Commission.

Accordingly, the Commission's complaint fails to plausibly allege facts that make Whitley a "necessary participant" or a "substantial factor" in any improper issuance of S-8 shares by Treaty, nor does it plausibly allege that Whitley "knowingly and substantially assisted" in any specific issuance of such shares.   The Commission's allegations regarding the S-8 share issuances by Treaty therefore fail to state a claim against Whitley for violation of Sections 5(a) and 5(c) of the Securities Act of 1933.

<u>**CONCLUSION**</u>

The Commission attempts to state a claim by relying on misleading interpretations of and references to letters authored by Whitley and on an inapplicable legal doctrine.   Considering the actual content and context of Whitley's correspondence and the applicable legal concepts, it is clear that the Commission's allegations fail to plausibly allege facts that make Whitley a "necessary participant" or a "substantial factor" in any offering of unregistered stock by Treaty or any non-exempt sale of unregistered shares, or to plausibly allege facts showing that Whitley

---

[14]   In connection with preparation of these letters, Whitley obtained specific written representations and assurances from Treaty as to its compliance with Plan requirements.  *See* Exhibits "10" and "11" attached hereto.

"knowingly and substantially assisted" in any such offering or sale.  As a result, the Commission's complaint fails to state a claim against Whitley for violation of, or aiding and abetting a violation of, Sections 5(a) and 5(c) of the Securities Act of 1933 and should therefore be dismissed.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Defendant Samuel E. Whitley prays that this motion be in all things granted and sustained; that the Court dismiss this action for failure to state a claim upon which relief can be granted; and that Whitley have such other and further relief, both general and special, legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

_____/s/ Robert M. Corn_____.
Robert M. Corn
State Bar of Texas No. 04828600

ATTORNEY-IN-CHARGE   FOR   DEFENDANT
SAMUEL E. WHITLEY

The Lyric Centre
440 Louisiana Street, Suite 2000
Houston, Texas 77002-1636
Telephone:  713-229-0055
Facsimile:   713-229-0057
Email: rcorn@corn-law.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2015, a true and correct copy of the above and foregoing was served in compliance with the Federal Rules of Civil Procedure upon the following:

***Via E.D. Tex. CM/ECF***
Jennifer D. Brandt
Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas 76102

***Via E.D. Tex. CM/ECF***
Jeffrey J. Ansley
Gregory D. Kelminson
Bell | Nunnally LLP
1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas 75204

***Via E.D. Tex. CM/ECF***
Andrew L. Kramer
Andrew L. Kramer, LLC
201 St. Charles Ave., Suite 2504
New Orleans, Louisiana 70170

***Via E.D. CM/ECF***
Henry L. Klein
Law Office of Henry L. Klein
844 Baronne Street
New Orleans, Louisiana 70113

_/s/ Robert M. Corn_____.
Robert M. Corn

068.001/2015-03-13 Whitley's FRCP 12b6 Mtn to Dismiss--Final.doc

## APPENDIX

## LIST OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | Example of Rule 144 letter from Whitley to Broadridge Corporate Issuer Solutions, Inc. |
| 2 | Letter from Whitley to Broadridge Corporate Issuer Solutions, Inc. dated 02-14-2013 regarding Ronald Blackburn's shares |
| 3 | Treaty Energy Corp.'s Form 10-K filed 04-15-2010 |
| 4 | Treaty Energy Corp.'s Form 10-K filed 04-15-2011 |
| 5 | Treaty Energy Corp.'s Form 10-K filed 06-13-2012 |
| 6 | Treaty Energy Corp.'s Form 10-K filed 06-27-2013 |
| 7 | Letter from Whitley to UBS Financial Services, Inc. dated 10-10-2011 together with referenced agreement |
| 8 | Letter from Whitley to Board of Directors, Treaty Energy Corp., dated 08-23-2012 regarding 2011 Stock Benefit Plan |
| 9 | Letter from Whitley to Board of Directors, Treaty Energy Corp., dated 02-20-2013 regarding 2011 Stock Benefit Plan |
| 10 | Co-Chief Executive Officer's Certificate dated 08-23-2012 regarding Treaty Energy Corp.'s 2011 Stock Benefit Plan |
| 11 | Co-Chief Executive Officer's Certificate dated 02-19-2013 regarding Treaty Energy Corp.'s 2011 Stock Benefit Plan |