UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SECURITIES AND EXCHANGE                CIVIL ACTION
COMMISSION

VERSUS                                 NO: 15-2451

RONALD L. BLACKBURN, ET AL             SECTION: "J"(1)

<u>**ORDER & REASONS**</u>

Before the Court is Defendant Lee C. Schlesinger's *Partial Motion to Dismiss* **(Rec. Doc. 18)**, Plaintiff's opposition thereto (Rec. Doc. 39), and Defendant's reply (Rec. Doc. 43). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART** and **DENIED IN PART**.

<u>**FACTS AND PROCEDURAL BACKGROUND**</u>

On December 15, 2014, the Securities and Exchange Commission ("SEC") filed a Complaint against Defendants for various claims under the Securities Act of 1933 ("Securities ACT") and the Securities Exchange Act of 1934 ("Exchange Act"). The Complaint alleges a widespread scheme by the individual Defendants to defraud investors and violate the antifraud, registration, and reporting provisions of the federal securities laws with respect to Defendant Treaty Energy Corporation ("Treaty"), a publicly traded oil and gas company. According to the SEC, Defendants Ronald Blackburn, Andrew Reid, Bruce Gwyn,

Michael Mulshine, Lee Schlesinger, and Samuel Whitley carried out this scheme between 2009 and 2013 by (1) concealing that Blackburn, a convicted felon, controlled Treaty as *de facto* officer and director; (2) engaging in a false promotional campaign intended to artificially inflate Treaty's stock price, including issuing a January 2012 press release falsely claiming a major oil strike in Belize; (3) perpetuating a fraudulent trading scheme involving the issuance and transfer of restricted and unrestricted Treaty stock through which Defendants raised millions of dollars selling virtually worthless stock to unwitting investors; and (4) conducting an illegal and unregistered offering of oil and gas working interests. The Complaint alleges that as a result of their misconduct, Defendants reaped illicit profits of over $4.9 million.

The SEC purports to allege claims against Schlesinger, Treaty's former Chief Investment Officer, for securities fraud in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder and for aiding and abetting Treaty's reporting violations under Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13

thereunder.[1] (Rec. Doc. 1, at 25-28.) The SEC claims that Schlesinger knowingly or recklessly participated in and furthered the scheme by failing to disclose the fact that Treaty was controlled by Blackburn, engaging in unregistered public offerings of restricted stock, and providing substantial assistance to Treaty in its violations of the reporting provisions. *Id.* at 9-11, 16-18, 28. The SEC seeks to enjoin Schlesinger from violating, directly or indirectly, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder; from aiding and abetting any violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder; and from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act. *Id.* at 30-32. In addition, the SEC also seeks disgorgement and the imposition of a civil monetary penalty. *Id.* at 31.

Schlesinger filed the instant *Partial Motion to Dismiss* **(Rec. Doc. 18)** on February 2, 2015. The SEC filed its response on March 19, 2015, and on April 2, 2015, Schlesinger filed a reply. This case was transferred to this Court from the United

---

[1] The SEC also alleges claims against Schlesinger under Section 5 of the Securities Act and Section 16(a) of the Exchange Act. However, Schlesinger does not seek dismissal of those claims in the instant motion.

States District Court for the Eastern District of Texas on June 30, 2105. The Court now considers the motion on the briefs.

## PARTIES' ARGUMENTS

Defendant asks this Court to dismiss the SEC's aforementioned claims against him with prejudice. Defendant argues that the SEC fails to allege facts with particularity as to Schlesinger and instead makes generalized allegations about "Treaty Officers" and "Treaty Defendants" as groups.[2] (Rec. Doc. 18, at 7.) Though the SEC alleges that the Treaty Officers knowingly failed to disclose that Blackburn maintained control over Treaty, Defendant argues that the SEC fails to indicate the manner in which Schlesinger should have disclosed this alleged omission or that Schlesinger owed a duty to disclose the alleged omission. *Id.* at 10. Likewise, as for the alleged affirmative misrepresentations of the Treaty Officers and Treaty Defendants, Defendant argues that the Complaint is "devoid of factual allegations identifying the specific time, place, and contents of the false representations allegedly made by Schlesinger." *Id.* at 11.

Regarding the SEC's claim for aiding and abetting violations of Section 13(a) and rules thereunder, Defendant argues that the SEC fails to plead with sufficient particularity

---

[2] The Complaint defines "Treaty Officers" as Reid, Gwyn, Schlesinger, and Mulshine, and defines "Treaty Defendants" as Blackburn and the Treaty Officers. (Rec. Doc. 1, at 8.)

that Schlesinger knew of the alleged facts omitted from the reports or that he knew that this information was supposed to be disclosed. *Id.* at 15. In addition, Defendant argues that the SEC fails to plead with particularity that Schlesinger knew that any shares he received were improper, that he knowingly and improperly transferred these shares to Gwyn, or that he was aware of or assisted Gwyn in selling these shares prior to the conclusion of the restricted period. *Id.* at 16.

In opposition, the SEC argues that the Complaint clearly defines the participants in the scheme, including Schlesinger, as "Treaty Officers" and "Treaty Defendants" and does not conflate factual allegations without distinguishing individual defendants and their respective roles. (Rec. Doc. 39, at 5.) For example, the Complaint identifies Schlesinger as Treaty's Chief Investment Officer and claims that Schlesinger signed Treaty's annual reports on Form 10-K in 2011 and 2012. *Id.* at 5-6. Furthermore, the SEC argues that its allegations are sufficiently specific despite some of the Defendants' conduct being "lumped together" because Treaty is a corporation that can act only through its officers and directors. *Id.* at 6. Therefore, the SEC argues that it has alleged a plausible claim against Schlesinger on the ground that he signed the 2011 and 2012 Forms 10-K, which failed to disclose Blackburn's role at

the company and "intentionally obfuscated his role through vague references to transactions with a 'related party,' 'major shareholder,' or 'affiliate.'" *Id.*

With respect to its claim for aiding and abetting violations of Section 13(a), the SEC argues that the Complaint contains factual allegations that, when taken as true, plausibly support a conclusion that Schlesinger, as Treaty's Chief Investment Officer, knew that Treaty's public filings during the relevant period failed to disclose Blackburn's control of the company and contained materially false and misleading statements about the purported Belize oil strike. *Id.* at 8. Furthermore, the SEC argues that the Complaint sufficiently alleges that Schlesinger substantially assisted Treaty's violations by signing the false and misleading Forms 10-K for 2011 and 2012. *Id.* at 9. In any case, the SEC argues that the heightened pleading requirements do not apply to its claim against Schlesinger for aiding and abetting Treaty's reporting violations because proof of fraudulent intent is not required under Section 13(a). *Id.* at 8. Lastly, in the event that the Court is inclined to grant any portion of Defendant's motion, the SEC respectfully requests that the Court grant it leave to amend the Complaint. *Id.* at 9.

## LEGAL STANDARD

Typically, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

However, allegations of fraud must meet a higher standard than the basic notice pleading required by Rule 8. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Importantly, though, the second sentence of Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) does not render the principles of simplicity established by Rule 8 inapplicable; the two rules must be read in harmony. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his

claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

**A.   Judicial Notice of Public SEC Filings**

In its opposition, the SEC asks the Court to take judicial notice of Treaty's SEC filings on Form 10-K for the years 2011

and 2012. (Rec. Doc. 39, at 3 n.2.) Generally, in deciding a motion to dismiss for failure to state a claim, a court may rely on only the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). However, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Moreover, when deciding a motion to dismiss a claim on the pleadings in securities actions, "a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). "Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Id*.

Accordingly, the Court will consider the contents of Treaty's 2011 and 2012 Forms 10-K for the purpose of determining what statements the documents contain. The Court will not, however, consider these documents to prove that Schlesinger was a Director of Treaty, a fact that the SEC has not alleged in its Complaint. To do so would be to consider the documents to prove

the truth of their contents, which is impermissible. *See Lovelace*, 78 F.3d at 1018.

**B.   Claims for Securities Fraud**

To state a claim for securities fraud under Section 10(b) of the Exchange Act or Rule 10b-5[3] in an SEC enforcement action, the SEC must allege facts that, if true, establish (1) a misstatement or omission (2) of material fact (3) in connection with the purchase or sale of a security (4) made with scienter. *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (citing *Aaron v. SEC*, 446 U.S. 680, 691 (1980)). A fact is considered material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).[4] For the purposes of securities fraud, scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

The elements constituting a prima facie showing of a violation of Section 17(a)(1) of the Securities Act are

---

[3] The scope of liability under Section 10(b) of the Exchange Act and Rule 10b-5, 17 C.F.R. § 240.10b-5, is the same. *SEC v. Zandford*, 535 U.S. 813, 816 n.1 (2002).

[4] The determination as to whether the allegations in the complaint sufficiently establish materiality is best left to resolution by a dispositive motion. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005).

essentially the same as the elements of a violation of Section 10(b) of the Exchange Act. *SEC. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). Scienter, however, is not an element of a claim under Section 17(a)(2) or Section 17(a)(3). *Meadows v. SEC*, 119 F.3d 1219, 1226 n.15 (5th Cir. 1997) (citing *Aaron*, 446 U.S. at 697). Under these subsections, the plaintiff need only show that the defendant acted with negligence. *Id.; Aaron*, 446 U.S. at 702.

Securities fraud claims are subject to the heightened pleading requirements of Rule 9(b). *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008). The heightened pleading standard of Rule 9(b) "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman*, 14 F.3d at 1067. The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339. In cases alleging a fraudulent omission of facts, Rule 9(b) requires the plaintiff to plead "the type of facts omitted, the

place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). Put simply, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how" of the events at issue, similar to "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *accord Dorsey*, 540 F.3d at 339.

The SEC alleges throughout its Complaint that the Treaty Officers and/or the Treaty Defendants violated the securities laws by failing to disclose material information. However, Rule 9(b) requires a plaintiff to plead with specificity which allegedly fraudulent statements were made by each defendant. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986). One of the purposes of Rule 9(b) is to guard against "guilt by association." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002). For this reason, general allegations that "lump all defendants together, failing to segregate the alleged wrongdoing of one from those of another," do not satisfy Rule 9(b). *In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993) *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994). Thus, the complaint "may not group the defendants together; instead, it must plead

specific facts that satisfy the Rule 9(b) requirements as to each defendant." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 723 (E.D. La. 2013); *cf. Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). Therefore, in determining whether the SEC has met the requirements of Rule 9(b), the Court will consider only allegations that are specific to Schlesinger.

First, the Complaint must identify statements contended to be fraudulent. In the instant case, the SEC alleges that Schlesinger and other Treaty Officers failed to disclose "Blackburn's criminal history or connection to, and influence over, the company . . . and instead generically referred to him as a 'majority shareholder,' 'affiliate,' or 'related party'" in their SEC filings. (Rec. Doc. 1, at 8-9.)[5] Accordingly, the Complaint adequately identifies the alleged misstatements and omissions, and when and where the statements were made: "Treaty's 2011 and 2012 Forms 10-K." *Id.* at 9.

---

[5] The SEC claims that this was materially misleading because, although Blackburn purported to act as a consultant for Treaty, Blackburn "actually acted as a *de facto* officer of the company [and] directed its day-to-day operations from its 2008 formation through, at least, September 2013." (Rec. Doc. 1, at 8.) For example, the Complaint alleges that Blackburn was at one time Treaty's majority shareholder; was paid nearly twice as much as Reid, the highest paid Treaty Officer; worked in the same office as Reid, Gwyn, and Schlesinger; frequently communicated with the Treaty Officers about day-to-day operations; directed the actions of the Treaty Officers; oversaw an oil and gas drilling program in Belize; paid for Treaty expenses with proceeds from sales of his own Treaty stock; managed Treaty's funds and dictated how money would be spent; negotiated loans on behalf of Treaty; and directed and approved the content of certain press releases. *Id.* at 8-9.

Next, the Complaint must identify Schlesinger as the maker of the statements. A corporate official who on behalf of the corporation signs a document that is filed with the SEC that contains material misrepresentations, such as a fraudulent Form 10-K, "makes" a statement and may be liable for making a false statement, regardless of whether he participated in the drafting of the document. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 587 (S.D. Tex. 2003); *see also Blackwell*, 440 F.3d at 287 ("Corporate statements can be tied to officers if plaintiffs allege they signed the documents on which the statements were made . . . ."); *In re Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) (holding that outside directors who signed a Form 10-K "accepted responsibility for its contents"); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) (holding that an officer who signs a fraudulent Form 10-K with scienter can be liable for securities fraud). Here, the Complaint alleges that Schlesinger, a corporate officer, signed Treaty's 2011 and 2012 Forms 10-K. (Rec. Doc. 1, at 10.) Therefore, the Complaint sufficiently identifies Schlesinger as the maker of statements contended to be fraudulent.

In addition to identifying Schlesinger as the maker of the statements in question, the Complaint must also adequately

allege scienter as to Schlesinger in particular. "Scienter must be shown because note every misstatement or omission in a corporation's disclosures gives rise to a Rule 10b-5 claim." *Tuchman*, 14 F.3d at 1067. Rule 9(b) provides that scienter may be "alleged generally." However, the Fifth Circuit has made clear that Rule 9(b) requires more than a simple allegation that a defendant had fraudulent intent. *Id*. at 1068. To plead scienter adequately, a plaintiff "must set forth *specific facts* supporting an inference of fraud." *Dorsey*, 540 F.3d at 339. "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Id*.

As to a defendant's motive to commit securities fraud, the Fifth Circuit has made clear that "certain motives alleged, especially those universal to corporations and their officers, do not suffice to establish an inference of fraud." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) (holding that alleged motive to increase the value of personal stock holdings by withholding information to induce investor participation in a tender offer was insufficient); *see also Melder*, 27 F.3d at 1102 (holding that alleged motive to inflate price of company stock to enhance

value of defendants' personal holdings was insufficient);
*Tuchman*, 14 F.3d at 1068 (holding that alleged motive to inflate
stock price and value of defendants' investments was
insufficient). "Corporate officers are *not* liable for acts
solely because they are officers, even where their day-to-day
involvement in the corporation is pleaded." *Blackwell*, 440 F.3d
at 287.

In the instant case, the SEC alleges that Schlesinger
"acted intentionally, knowingly or with severe recklessness with
respect to the truth." (Rec. Doc. 1, at 26.) However, the
Complaint does not set forth sufficient facts showing
Schlesinger's motive to commit securities fraud. The SEC alleges
that the Treaty Defendants were motivated to conceal Blackburn's
role "to lure prospective investors to the company in order to
sell them restricted common stock at a discount market price."
(Rec. Doc. 1, at 16.) As a result of the Treaty Defendants'
misrepresentations and omissions in SEC filings, "Treaty
obtained money from investors who purchased stock in the
company, the Treaty Officers received salaries, and the Treaty
Officers . . . received Treaty stock they later sold for
profits." *Id.* at 11. The SEC does not plead any facts showing
Schlesinger's motive in particular. Moreover, the general
allegations of the Treaty Officers' motives to attract

investors, enhance the value of their personal stock holdings, and obtain salaries are universal to corporations and their officers and do not establish an inference of fraud. *See Flaherty*, 565 F.3d at 213.

The Complaint also fails to identify circumstances that indicate conscious behavior on the part of Schlesinger. According to Fifth Circuit precedent, pleading specific facts that demonstrate conscious behavior "employs an even 'more stringent standard' than the motive requirement." *Flaherty*, 565 F.3d at 213. Under this standard, "the strength of the circumstantial allegations must be correspondingly greater." *Tuchman*, 14 F.3d at 1068. Here, the Complaint alleges that Schlesinger was appointed to his position as Chief Investment Officer by Blackburn in 2011, Schlesinger worked in the same office as Blackburn, and Schlesinger was one of the officers who signed the 2011 and 2012 Forms 10-K. (Rec. Doc. 1, at 7-10.) The Complaint does not allege that Schlesinger certified the accuracy and completeness of Treaty's 2011 and 2012 forms, as it does for Defendants Reid and Gwyn. *Id*. at 10. Nor does the Complaint allege any fact that makes it reasonable to believe that Schlesinger knew that any of the SEC filings he signed were materially misleading or that he should have known. At most, the SEC's allegations indicate that Treaty's 2011 and 2012 Forms 10-

K were incomplete; however, such an allegation falls far short of identifying conscious behavior on the part of Schlesinger. *See Lovelace*, 78 F.3d at 1020. Therefore, the SEC has not alleged specific facts sufficient to indicate that Schlesinger omitted material information from the 2011 and 2012 Forms 10-K with scienter. Without such a showing, the Complaint fails to state a claim against Schlesinger for securities fraud.

**C.   Claims for Aiding and Abetting Violations of Section 13(a) and Related Rules**

The SEC claims that Schlesinger aided and abetted Treaty's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder. (Rec. Doc. 1, at 28.) Section 13(a) and Rules 13a-1, 13a-11, and 13a-13 require issuers of registered securities to file with the SEC annual reports on Form 10-K, current reports on Form 8-K, and quarterly reports on Form 10-Q. *See* 15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13. In addition, Rule 12b-20 requires the issuer to disclose any material information as may be necessary to ensure that the reports are not misleading. *Id.* § 240.12b-20. The reporting provisions of Section 13(a) are "clear and unequivocal, and they are satisfied only by the filing of complete, accurate and timely reports." *SEC v. IMC Int'l, Inc.*, 384 F. Supp. 889, 893 (N.D. Tex. 1974).

Section 20(e) of the Exchange Act authorizes the SEC to bring claims for aiding and abetting primary violations of the federal securities laws. *See* 15 U.S.C. § 78t(e). To state a claim for aiding and abetting, the SEC must allege facts that, if true, establish "(1) that the primary party committed a securities violation; (2) that the aider and abettor had 'general awareness' of its role in the violation; and (3) that the aider and abettor knowingly rendered 'substantial assistance' in furtherance of it." *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 621 (5th Cir. 1993). The Fifth Circuit considers the elements of "general awareness" and "knowing substantial assistance" to be "a single scienter requirement that varies on a sliding scale from 'recklessness' to 'conscious intent.'" *Id.* Generally, the plaintiff must show conscious intent. *Id.* However, if there is "some special duty of disclosure, or evidence that the assistance to the violator was unusual in character and degree," then a recklessness standard applies. *Id.*

The parties spend a considerable portion of their briefs arguing over whether the heightened pleading requirements of Rule 9(b) apply to claims under Section 13(a). (*See* Rec. Doc. 39, at 7-8, 8 n. 6; Rec. Doc. 43, at 4-5.) The SEC argues that Rule 9(b) does not apply because "Section 13(a) is not a fraud claim and proof of fraudulent intent is not required." (Rec.

Doc. 39, at 8.) However, the Complaint does not purport to allege a claim against Schlesinger for a primary violation of Section 13(a); it alleges that Schlesinger aided and abetted Treaty's violation. Therefore, the proper inquiry is not whether Rule 9(b) applies to a claim for violating Section 13(a), but rather whether it applies to the SEC's allegations that Schlesinger aided and abetted such a violation.

Rule 9(b) applies to allegations of fraud and scienter, "whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Accordingly, any allegations of fraudulent conduct or scienter must still satisfy the heightened pleading requirements of Rule 9(b). *Id.* If particular allegations of fraud or scienter are insufficiently pleaded under Rule 9(b), a court should "disregard" those allegations. *Id.* The court should then examine the allegations that remain and determine whether they state a claim. *Id.*

As discussed above, a prima facie claim for aiding and abetting a violation of securities laws involves an underlying requirement of scienter. *See Abbott*, 2 F.3d at 621. Rule 9(b) applies to those allegations of scienter. Accordingly, the Complaint must allege specific facts that support an inference of Schlesinger's conscious intent or, alternatively, the

20

Complaint may allege that Schlesinger had a special duty to disclose or that his assistance was unusual in character and degree, and he acted recklessly.

At the very least, the Complaint must allege facts to support an inference that Schlesinger acted recklessly. In the Fifth Circuit, "recklessness" is "limited to those highly unreasonable omissions or misrepresentations that involve . . . an extreme departure from the standards of ordinary care [and] present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Abbott*, 2 F.3d at 621 n.25 (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981)).

In the instant case, the SEC's aiding and abetting claim against Schlesinger is based on the same alleged facts as its securities fraud claim. That is, Schlesinger signed two Forms 10-K that failed to disclose Blackburn's role in the company, despite being appointed to his position by Blackburn and working in the same office as Blackburn. (Rec. Doc. 1, at 7-10.) These allegations do not support an inference that Schlesinger acted with conscious intent or that his actions involved an "extreme departure from the standards of ordinary care." *See Abbott*, 2 F.3d at 621 n.25. Even if the Court assumes, without deciding,

that the Complaint sufficiently pleads a primary violation, it fails to allege sufficient facts to show Schlesinger's general awareness and knowing substantial assistance. Accordingly, the Complaint fails to state a claim against Schlesinger for aiding and abetting violations of Section 13(a).

**D. Relief Available When Heightened Pleading Requirements Have Not Been Met**

Although the Court concludes that the SEC's Complaint fails to meet the pleading requirements, dismissal with prejudice is not required. In *Hart v. Bayer Corp.*, the Fifth Circuit noted that "a plaintiff's failure to meet the specific pleading requirements [of Rule 9(b)] should not automatically or inflexibility [sic] result in dismissal of the complaint with prejudice to re-filing." 199 F.3d 239, 248 n.6 (5th Cir. 2000). A court may dismiss the claim, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* The decision whether to grant a plaintiff leave to amend pleadings is within the sound discretion of the district court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In determining whether to allow an amendment of the pleadings, a court should consider undue delay, undue prejudice, timeliness of the amendment, and futility of the amendment. *Foman v. Davis*, 371

U.S. 178, 182 (1962). After considering the aforementioned factors, the Court concludes that the SEC should be given an opportunity to amend the Complaint.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Partial Motion to Dismiss* **(Rec. Doc. 18)** is **GRANTED IN PART**, inasmuch as the Court concludes that Plaintiff's Complaint fails to meet the pleading requirements, and **DENIED IN PART**, as to Defendant's request for a dismissal with prejudice of Plaintiff's claims. Plaintiff shall file an amended complaint within twenty-one (21) days from entry of this order; otherwise the aforementioned claims against Defendant will be dismissed.

New Orleans, Louisiana this 10th day of September, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE