UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SECURITIES AND EXCHANGE                    CIVIL ACTION
COMMISSION

VERSUS                                     NO: 15-2451

RONALD L. BLACKBURN, ET AL                 SECTION: "J"(1)

<u>**ORDER & REASONS**</u>

Before the Court is Defendant Lee C. Schlesinger's *Motion to Dismiss* **(Rec. Doc. 105)**; an opposition thereto (Rec. Doc. 115) filed by Plaintiff, the Securities and Exchange Commission; and Schlesinger's reply (Rec. Doc. 120). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

<u>**FACTS AND PROCEDURAL BACKGROUND**</u>

This is a civil enforcement action brought by the United States Securities and Exchange Commission ("SEC") against the Defendants for various claims under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). The SEC alleges a widespread scheme by the individual Defendants to defraud investors and violate the antifraud, registration, and reporting provisions of the federal securities laws with respect to Defendant Treaty Energy

Corporation ("Treaty"), a publicly traded oil and gas company. According to the SEC, Defendants Ronald Blackburn, Andrew Reid, Bruce Gwyn, Michael Mulshine, Lee Schlesinger, and Samuel Whitley carried out this scheme between 2009 and 2013 by (1) concealing that Blackburn, a convicted felon, controlled Treaty as *de facto* officer and director; (2) engaging in a false promotional campaign intended to artificially inflate Treaty's stock price, including issuing a January 2012 press release falsely claiming a major oil strike in Belize; (3) perpetuating a fraudulent trading scheme involving the issuance and transfer of restricted and unrestricted Treaty stock through which Defendants raised millions of dollars selling virtually worthless stock to unwitting investors; and (4) conducting an illegal and unregistered offering of oil and gas working interests. The SEC alleges that as a result of their misconduct, Defendants reaped illicit profits of over $4.9 million.

On February 2, 2015, Schlesinger filed a Partial Motion to Dismiss (Rec. Doc. 18). During the pendency of Schlesinger's motion, on June, 20, 2015, this case was transferred to this Court from the United States District Court for the Eastern District of Texas. (Rec. Doc. 66.) Subsequently, on September 10, 2015, this Court granted Schlesinger's motion but gave the SEC an opportunity to amend its complaint in order to conform to the requirements for pleading under the Federal Rules of Civil Procedure. (Rec. Doc.

91, at 23.) The SEC filed its First Amended Complaint (Rec. Doc. 97) on October 1, 2015.

According to the Amended Complaint, Schlesinger began working with Treaty in May 2011. *Id.* at 5. Initially, Schlesinger served as a consultant, selling shares on Treaty's behalf. *Id.* In November 2011, Schlesinger became Treaty's Chief Investment Officer ("CIO") and remained in that position until his resignation in September 2013. *Id.* Schlesinger also served as Treaty's "investor relations point of contact" between October 2012 and January 2013. *Id.* In addition, Schlesinger was a member of Treaty's Board of Directors during his entire tenure with the company. *Id.* While working for Treaty, Schlesinger signed Treaty's annual reports on SEC Form 10-K filed in 2011 and 2012 and Treaty's registration statements on SEC Form S-8 filed in 2012 and 2013. *Id.*

In its Amended Complaint, the SEC alleges that Schlesinger knowingly or recklessly participated in and furthered the Defendants' scheme by failing to disclose the fact that Blackburn controlled Treaty, by engaging in unregistered public offerings of restricted stock, by providing substantial assistance to Treaty in its violations of the reporting provisions, and by failing to make required filings with the SEC regarding stock ownership and disposition. *Id.* at 8-11, 18-19, 24-26, 29.

The SEC asserts four types of claims against Schlesinger. First, the SEC asserts claims against Schlesinger for securities

fraud in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder. *Id.* at 27-28. Second, the SEC asserts a claim against Schlesinger for aiding and abetting Treaty's reporting violations under Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder. *Id.* at 29. Third, the SEC asserts a claim against Schlesinger for reporting violations under Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder. *Id.* at 31. Fourth, the SEC asserts a claim against Schlesinger for offering or selling unregistered securities in violation of Section 5 of the Securities Act, 15 U.S.C. § 77e(a), (c). *Id.* at 26.

The SEC seeks to enjoin Schlesinger from violating, directly or indirectly, the above-mentioned sections of the Securities Act and Exchange Act and the related rules, from aiding and abetting any violation of Section 13(a) of the Exchange Act and the related rules, and from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act. *Id.* at 31-32. In addition, the SEC also seeks disgorgement and the imposition of a civil monetary penalty. *Id.* at 33.

Schlesinger filed the instant *Motion to Dismiss* **(Rec. Doc. 105)** on October 22, 2015, seeking to dismiss all claims against him set forth in the Amended Complaint.[1] The SEC filed its response on December 8, 2015. On December 16, 2015, Schlesinger filed a reply. The Court now considers the motion on the briefs, without oral argument.

## PARTIES' ARGUMENTS

First, Schlesinger moves to dismiss the SEC's claims that he violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. In support of his motion, Schlesinger contends that the SEC has failed to plead with particularity the circumstances constituting the alleged fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Rec. Doc. 105-2, at 9, 12-13.) Further, Schlesinger argues that the SEC fails to allege the requisite scienter, because the allegations in the Amended Complaint "do nothing to establish Schlesinger's alleged motive to defraud with any plausibility." *Id.* at 9. According to Schlesinger, the Amended Complaint alleges that his primary motive was to profit from his Treaty transactions, which is insufficient to establish an inference of fraud. *Id.* at 15. Moreover, Schlesinger claims that the allegation that he asked for an advance to pay a loan "is indicative of a *lack of motive* on [his] part, because doing so

---

[1] In his partial motion to dismiss, Schlesinger did not seek dismissal of the SEC's claims against him under Section 5 of the Securities Act or Section 16(a) of the Exchange Act. (Rec. Doc. 91, at 3 n.1.)

would be seeking a legitimate, not fraudulent, means to pay for his expenses." *Id.* at 16. In addition, Schlesinger claims that the SEC fails to identify circumstances indicating conscious behavior by him. *Id.* at 17. Schlesinger maintains that he did not certify the accuracy and completeness of Treaty's SEC filings and argues that the SEC fails to allege facts establishing that he knew or should have known that any of Treaty's SEC filings were materially misleading. *Id.* at 17-20. With regard to the SEC's claims under Section 17(a)(2) and (3), Schlesinger contends that the Amended Complaint fails to demonstrate that he was negligent. *Id.* at 20-21.

Next, Schlesinger contends that the SEC fails to allege sufficient facts to support its claim for aiding and abetting under Section 13(a) of the Exchange Act and related rules thereunder. *Id,* at 21. Schlesinger argues that the SEC must allege specific facts that support an inference of his conscious intent or, alternatively, that he had a special duty to disclose or that his assistance was unusual in character and degree, and that he acted recklessly. *Id.* at 22. According to Schlesinger, there is no showing of his conscious intent because he merely electronically signed the SEC filings; he did not certify their accuracy. *Id.* at 23. Similarly, Schlesinger maintains that the SEC fails to allege facts sufficient to illustrate an extreme departure from the

standard of ordinary care that would warrant a finding of recklessness. *Id.*

Further, Schlesinger contends that the SEC's claim for reporting violations under Section 16(a) of the Exchange Act fails because the Amended Complaint does not adequately allege that Schlesinger was an officer or director at the time he owned Treaty shares. *Id.* at 9, 24. Schlesinger argues that "it is reasonable to conclude that Schlesinger might have acquired these shares while he was not an officer or director," and therefore had no obligation to report under Section 16(a). *Id.* at 26. For example, Schlesinger claims that there is a period of approximately five months where one of the alleged transactions could have occurred while he was no longer an officer or director of Treaty. *Id.* at 26.

Lastly, with respect to the SEC's Section 5 claim, Schlesinger contends that the Amended Complaint has not sufficiently alleged that he did in fact sell securities that were required to be registered. *Id.* at 9, 26. Schlesinger points out that the Amended Complaint alleges that he transferred purportedly unrestricted shares to two companies controlled by Gwyn, who then sold the shares. *Id.* at 26-27. Moreover, Schlesinger argues that he was not a substantial factor and necessary participant in these sales because there was no reason for him to be involved. *Id.* at 27. "[A]s alleged by the Commission, there was no reason to issue shares to Schlesinger because they were illegally registered from

7

the onset. . . . Because the Registration Statement, as alleged by the Commission, was illegal, there was no reason for Schlesinger to be involved." *Id.* Schlesinger claims his role was not necessary because the shares could have been directly issued to the entities controlled by Gwyn. *Id.*

In response, the SEC opposes Schlesinger's motion and maintains that the Amended Complaint sets forth nonconclusory facts that detail the time, place, and nature of Defendants' manipulative stock trading scheme, and details Schlesinger's relationship to and role in that scheme as an officer and director of the company. (Rec. Doc. 115, at 12.) First, with regard to its claims for securities fraud, the SEC contends that the Amended Complaint amply alleges that Schlesinger acted with scienter. *Id.* at 13. The SEC claims that it need only plead scienter through facts that permit an inference that Schlesinger engaged in severely reckless conduct. *Id.* at 13-15. Further, the SEC point out that Schlesinger relies on cases governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires plaintiffs in private securities fraud litigation to plead facts giving rise to a "strong inference" of scienter. *Id.* at 14. According to the SEC, this Court applied the PSLRA's "strong inference" standard in its previous Order on Schlesinger's Partial Motion to Dismiss, requiring the SEC to allege facts that would show a defendant's motive to commit securities fraud or identify circumstances that

would indicate the defendant's conscious behavior. *Id.* at 15. Nevertheless, the SEC argues that the Amended Complaint adequately alleges Schlesinger's motive and conscious behavior. *Id.* at 15-20. Moreover, the SEC maintains that Schlesinger was at least negligent in signing public filings that failed to disclose Blackburn's criminal history and true role in the company. *Id.* at 21.

Second, the SEC contends that it adequately alleged that Schlesinger aided and abetted Treaty's violations of the reporting provisions of Section 13(a) of the Exchange Act and the rules thereunder. *Id.* The SEC states that the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 modified the scienter requirement for such claims in SEC enforcement actions by expressly expanding it from "knowingly" providing substantial assistance to also include doing so "recklessly." *Id.* at 22. The SEC maintains that the Amended Complaint properly alleges that Treaty violated the reporting provisions by filing reports on Forms 10-K, 10-Q, and 8-K that failed to disclose Blackburn's control of the company and contained materially false and misleading statements about the purported Belize oil strike. *Id.* Further, the SEC argues that the Amended Complaint alleges that Schlesinger knew, or was reckless in not knowing, that the filings failed to disclose this information and were therefore incomplete, false, and misleading at the time he signed them. *Id.* at 22-23. Moreover, the SEC claims

that Schlesinger owed fiduciary duties to the company and the shareholders to ensure that the filings he signed were complete and accurate. *Id.* at 23.

Third, regarding its claim for reporting violations under Section 16(a) of the Exchange Act, the SEC contends that the allegations in the Amended Complaint, which must be taken as true, state that "Schlesinger, an officer and director of Treaty during his entire tenure (November 2011 through September 2013), and a consultant from May-November 2011 who sold Treaty securities and received treaty stock awards and shares, failed to file required reports of ownership and . . . changes of ownership of common stock and other equity securities" with the SEC. *Id.* at 24. For example, the SEC alleges that Schlesinger purchased 20,000,000 Treaty shares and later sold those shares, but never reported his ownership or change of ownership as required. *Id.* at 24 n.9. Therefore, the SEC maintains that the Amended Complaint states a plausible claim that Schlesinger violated Section 16(a) and Rule 16a-3 of the Exchange Act. *Id.* at 24. The SEC argues that the evidentiary defenses raised by Schlesinger are inappropriate at this stage and should not be considered on a motion to dismiss. *Id.*

Lastly, the SEC contends that it has adequately alleged that Schlesinger violated Section 5 of the Securities Act. The SEC claims that the Amended Complaint clearly alleges that Schlesinger

directly sold or offered to sell unregistered Treaty securities. *Id.* at 25. According to the SEC, Schlesinger's argument that he was not a substantial factor and necessary participant only go to whether he was an indirect seller and ignore the allegations that he is liable under Section 5 as a direct seller. *Id.*

### LEGAL STANDARD

Typically, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

However, allegations of fraud must meet a higher standard than the basic notice pleading required by Rule 8. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Importantly, though, the second sentence of Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) does not render the principles of simplicity established by Rule 8 inapplicable; the

11

two rules must be read in harmony. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

As an initial matter, both parties ask the Court to take judicial notice of certain documents filed by Treaty with the SEC. Schlesinger asks the Court to take judicial notice of Treaty's SEC filings on Form 10-K for the years 2011 and 2012 and Form S-8 for the years 2012 and 2013. (Rec. Doc. 105-2, at 19 n.1.) Similarly, the SEC asks the Court to take judicial notice of Treaty's SEC filings on Form 10-K for the years 2011 and 2012. (Rec. Doc. 115, at 9 n.1.) Generally, in deciding a motion to dismiss for failure to state a claim, a court may rely on only the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). However, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). When deciding a motion to dismiss in securities actions, "a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). Accordingly, the Court takes judicial notice of Treaty's SEC filings on Form 10-K for the years 2011 and 2012 and Form S-8 for the years 2012 and 2013.

**A.  Securities Fraud Under Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5**

To state a claim for securities fraud under Section 10(b) or Rule 10b-5 of the Exchange Act, the SEC must allege facts that, if true, establish (1) a misstatement or omission (2) of material fact (3) in connection with the purchase or sale of a security (4) made with scienter. *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (citing *Aaron v. SEC*, 446 U.S. 680, 691 (1980)). The elements constituting a prima facie showing of a violation of Section 17(a)(1) of the Securities Act are essentially the same. *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). A fact is considered material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).[2] For the purposes of securities fraud, scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

Rule 9(b) imposes a heightened level of pleading for all fraud claims, including claims for securities fraud. *Dorsey v. Portfolio*

---

[2] A court can determine statements to be immaterial as a matter of law on a motion to dismiss. *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002). However, it is well established that, "[b]ecause materiality is a mixed question of law and fact, it is usually left for the jury." *Id.* (alteration in original) (quoting *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996)).

*Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008). The heightened pleading standard of Rule 9(b) "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman*, 14 F.3d at 1067. The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339. In cases alleging a fraudulent omission of facts, Rule 9(b) requires the plaintiff to plead "the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). Put simply, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how" of the events at issue, similar to "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *accord Dorsey*, 540 F.3d at 339.

In the Court's previous Order on Schlesinger's Partial Motion to Dismiss, the Court determined that the SEC's original complaint adequately set forth "the who, what, when, where, and how" of the alleged fraud. (Rec. Doc. 91, at 13-4, 13 n.5.) However, the Court

concluded that the original complaint failed to plead scienter adequately. *Id.* at 15-18. Therefore, the Court will first consider whether the Amended Complaint adequately alleges scienter.

The scienter element may be satisfied by proof that the defendants acted with severe recklessness. *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). Although scienter may be "alleged generally," the Fifth Circuit has made clear that "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey*, 540 F.3d at 339 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)); *accord Tuchman*, 14 F.3d at 1068. "Scienter must be shown because not every misstatement or omission in a corporation's disclosures gives rise to a Rule 10b-5 claim." *Tuchman*, 14 F.3d at 1067. "To plead scienter adequately, a plaintiff must set forth *specific* facts that support an inference of fraud." *Dorsey*, 540 F.3d at 339; *accord Tuchman*, 14 F.3d at 1068. "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Dorsey*, 540 F.3d at 339; *accord Tuchman*, 14 F.3d at 1068.

In its opposition, the SEC quotes the above-cited language from *Dorsey v. Portfolio Equities, Inc.* and claims that this Court "applied the PSLRA's 'strong inference' standard" in its Order on Schlesinger's Partial Motion to Dismiss. (Rec. Doc. 115, at 15.)

16

As the Court will explain, however, it properly applied the Fifth Circuit's Rule 9(b) standard as it existed before passage of the PSLRA. Before the passage of the PSLRA, the circuit courts of appeals had not reached a consensus regarding the nature and content of the allegations of scienter that a plaintiff must plead in order to survive a motion to dismiss. For example, since the 1970s, the Second Circuit has required a plaintiff to allege facts giving rise to a "strong inference" of fraudulent intent in order to adequately plead scienter under Rule 9(b). *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir. 1979). Similarly, the Fifth Circuit also required plaintiffs to plead specific facts, but unlike the Second Circuit, only mandated that the specific facts alleged "support an inference of fraud." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001) (quoting *Tuchman*, 14 F.3d at 1068). However, not all courts of appeals endorsed a stringent interpretation of Rule 9(b). For example, the Ninth Circuit allowed plaintiffs to plead scienter generally, "simply by saying that scienter existed." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994).

Unsatisfied with the disagreement among the circuits, as well as the perceived inability of Rule 9(b) to prevent abusive, frivolous strike suits,[3] Congress enacted the PSLRA in 1995, *see*

---

[3] The legislative history of the PSLRA explains the reasoning behind the heightened pleading standard: "[Rule 9(b)] has not prevented abuse of the securities laws by private litigants. Moreover, the courts of appeals have

17

Pub. L. No. 104-67, 109 Stat. 737 (Dec. 22, 1995) (codified in part at 15 U.S.C. § 78u), which heightened the requirement for pleading scienter to the level adopted by the Second Circuit. *See* 15 U.S.C. § 78u-4(b)(2). However, the PSLRA's "strong inference" standard is more stringent than any circuit's interpretation of Rule 9(b); a complaint will survive only if the inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. In sum, the PSLRA created a distinct, heightened pleading standard for private securities actions, separate and apart from the general requirements of Rule 9(b). *Id.* at 321-22.

The plain language of the statute makes clear that the Fifth Circuit's previous rule, which required that a plaintiff plead facts that support an "inference of fraud," has been supplanted in private securities fraud actions by the PSLRA's "strong inference" requirement. *Zonagen*, 267 F.3d at 407. The SEC correctly states that the PSLRA does not apply to SEC enforcement actions. However, enforcement actions are still governed by the requirements of Rule 9(b). In cases governed by Rule 9(b) but not governed by the PSLRA, courts in this circuit apply the pre-PSLRA Rule 9(b) standard. *See, e.g.*, *SEC v. Shapiro*, No. 405CV364, 2007 WL 788335, at *2

interpreted Rule 9(b)'s requirement in conflicting ways, creating distinctly different standards among the circuits." H.R. Rep. No. 104-369, at 41 (1995) (Conf. Rep.) (footnotes omitted). Thus, in enacting the PSLRA, Congress recognized "the need to establish uniform and more stringent pleading requirements to curtail the filing of meritless lawsuits." *Id.*

(E.D. Tex. Mar. 14, 2007) ("Rule 9(b) requires a plaintiff to set forth specific facts that support an inference of fraud." (citing *Tuchman*, 14 F.3d at 1068)); *SEC v. Gann*, No. 305CV0063L, 2006 WL 616005, at *3 (N.D. Tex. Mar. 13, 2006) ("To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." (quoting *Tuchman*, 14 F.3d at 1068)); *SEC v. Kornman*, 391 F. Supp. 2d 477, 493 (N.D. Tex. 2005) (same).

In its previous Order, the Court applied the Fifth Circuit's Rule 9(b) standard, not the more stringent PSLRA standard. (Rec. Doc. 91, at 15.) As amply demonstrated by Fifth Circuit precedent, Rule 9(b) requires the SEC to set forth specific facts in the complaint that support an inference of fraud. *See, e.g.*, *Tuchman*, 14 F.3d at 1068. Before Congress passed the PSLRA, the Fifth Circuit announced two means by which a plaintiff could satisfy the scienter requirement at the pleading state: the plaintiff could either (1) allege "facts that that show a defendant's motive to commit securities fraud," or (2) "allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[4] *Zonagen*, 267 F.3d at 409 (citing *Tuchman*, 14 F.3d at 1068). The appropriate analysis is to consider whether all facts

---

[4] The Fifth Circuit apparently adopted these two formulations from the Second Circuit, although for the former, the Second Circuit requires a plaintiff to allege facts showing that a defendant had both a motive and opportunity to commit fraud. *Zonagen*, 267 F.3d at 409 (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

and circumstances "taken together" are sufficient to support the necessary inference of scienter. *See id.* at 425.

The Fifth Circuit has held, both before the passage of the PSLRA and after, that "certain motives alleged, especially those universal to corporations and their officers, do not suffice to establish an inference of fraud under Rule 9(b)." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) (citing *Melder*, 27 F.3d at 1102; *Tuchman*, 14 F.3d at 1068). For example, allegations that officers and directors were motivated by incentive compensation, standing alone, are insufficient to allow for an inference of scienter. *Melder*, 27 F.3d at 1102; *Tuchman*, 14 F.3d at 1068; *see also Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) ("Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders, including . . . the desire to maintain a high stock price in order to increase executive compensation."). However, in the Second Circuit, adequate motive typically arose from the desire to profit from extensive insider sales, such as "when corporate insiders were alleged to have misrepresented to the public material facts about the corporation's performance or prospects in order to keep the stock price artificially high while they sold their own shares at a profit." *Novak*, 216 F.3d at 307; *see also Tellabs*, 551 U.S. at 325 ("[P]ersonal financial gain may weigh heavily in favor of a scienter inference . . . .").

In the instant case, the SEC alleges that "Schlesinger realized a direct and concrete personal financial benefit as a result of the fraudulent stock manipulation scheme—money—and that he was subject to the same motivation common to all market manipulators: the desire for personal profit." (Rec. Doc. 115, at 16.) In particular, the Amended Complaint alleges that Schlesinger was "motivated to conceal Blackburn's control of the company and maintain the Belize Announcement charade because [he] depended on the Treaty scheme for [his] livelihood." (Rec. Doc. 97, at 13.) Further, the Amended Complaint states that Schlesinger knew that Treaty's oil and gas operations were highly unprofitable and that the only way for him to make money was to sell Treaty stock. *Id.* Finally, the Amended Complaint alleges that "Schlesinger purchased 20,000,000 shares from Treaty at a 50% discount with money he borrowed from his mother" and later "sold the shares for a net profit of $188,668." *Id.* at 25. The Amended Complaint also alleges that Schlesinger received $322,498 in direct payments from Treaty in misappropriated funds. *Id.*

The SEC's allegations of motive are distinguishable from the rote conclusory allegations universal to all corporate officers in *Melder v. Morris* and *Tuchman v. DSC Communications Corp.* For example, in *Melder*, the plaintiffs attempted to establish scienter by alleging that the corporation's officers, directors, accountants, and underwriters entered into a conspiracy to inflate

21

the price of the corporation's stock. 27 F.3d at 1102. Notably, the Fifth Circuit determined that the defendants' motive to commit securities fraud was not readily apparent because "there [was] no allegation that any of the corporate defendants actually personally profited from the allegedly inflated stock values or the money raised from the two offerings." *Id.; see also Tuchman*, 14 F.3d at 1068 ("[P]laintiffs do not allege that the defendants purchased or sold any stock during the class period."). Here, by contrast, the SEC alleges that Schlesinger personally profited from the allegedly inflated stock values and the money raised. Even if the SEC's allegations of motive, standing alone, would be insufficient to support an inference of fraud, the allegations of motive enhance the other allegations of scienter.

Absent allegations of improper motive, the SEC may still meet the pleading standard by alleging facts that constitute strong circumstantial evidence of conscious behavior or severe recklessness on the part of Schlesinger. *See, e.g., Tuchman*, 14 F.3d at 1068. Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been

22

aware of it."[5] *Zonagen*, 267 F.3d at 408. "Where the complaint alleges that defendants knew facts or had access to non-public information contradicting their public statements, recklessness is adequately pled for defendants who knew or should have known they were misrepresenting material facts with respect to the corporate business." *SEC v. Egan*, 994 F. Supp. 2d 558, 565 (S.D.N.Y. 2014) (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001)). Alternatively, a complaint adequately pleads a reckless omission if it alleges that defendants "failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Id.* (quoting *Novak*, 216 F.3d at 308).

Here, the SEC alleges that Schlesinger knowingly and intentionally participated in a fraudulent scheme by making material misrepresentations and omissions in Treaty's Forms 10-K filed in 2011 and 2012, relating to Blackburn's control over the company. The Amended Complaint alleges that Schlesinger was Treaty's Chief Investment Officer and served as a member of the Board of Directors. (Rec. Doc. 97, at 5.) Further, the Amended Complaint alleges that Schlesinger signed Treaty's SEC filings in his capacity as director. *Id.* By signing the filings as a director of Treaty, Schlesinger "is stating to the world that he, with other

---

[5] Although the Fifth Circuit often uses the modifier "severe," its definition of severe recklessness is the same as the definition of recklessness applied by other circuits. *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 526 n.2 (5th Cir. 1992) (citing *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 n.9 (11th Cir. 1985)).

signers, is jointly making the statements within the document." *N. Port Firefighters' Pension—Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 745 (N.D. Tex. 2013); *see also Blackwell*, 440 F.3d at 287 ("Corporate statements can be tied to officers if plaintiffs allege they signed the documents on which the statements were made . . . .").[6]

In addition, the SEC claims that Schlesinger was aware of Blackburn's control of Treaty when Schlesinger signed Treaty's SEC filings. For example, the Amended Complaint alleges that Schlesinger knew that Blackburn held a substantial percentage of Treaty stock, was paid nearly twice as much as any Treaty officer, worked in the same office as Schlesinger and other Treaty officers, frequently communicated with Schlesinger about day-to-day operations of the company, directed Schlesinger's work, oversaw an oil and gas drilling program in Belize for which he served as Treaty's point of contact with the company's partner in the program, participated in selecting and working with Treaty's vendors and professional service providers, orchestrated sales and

---

[6] Schlesinger argues that the SEC's allegations are insufficient to demonstrate conscious behavior on his part because he merely signed Treaty's public filings and did not certify their accuracy. (Rec. Doc. 105-2, at 17-20.) However, the SEC explains that is has not charged Schlesinger with making a false certification under the Sarbanes-Oxley Act of 2002, which gives rise to a separate cause of action and remedies. (Rec. Doc. 115, at 20 n.7.) Rather, the SEC maintains that by signing Treaty's filings in his capacity as director, Schlesinger is making a statement and attesting to its accuracy. *Id.* (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) ("[W]hen a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true.")).

transfers of Treaty stock by soliciting investors and either arranging for Treaty to issue them stock directly or selling them his own shares, used proceeds from sales of his own Treaty stock to pay company expenses, managed Treaty's funds and dictated how company money would be spent, routinely negotiated loans on Treaty's behalf, and directed and approved the timing and content of key press releases published by Treaty. (Rec. Doc. 97, at 8-9.) Further, the SEC claims that Blackburn hired Schlesinger and appointed Schlesinger to act as Treaty's CIO. *Id.* at 8. The Amended Complaint alleges that, despite Schlesinger's knowledge of Blackburn's extensive involvement in nearly all facets of the company, Schlesinger signed the 2011 and 2012 Forms 10-K, which failed to disclose Blackburn's role at the company and intentionally misrepresented his role by generically referring to him as a "major shareholder," "affiliate," or "related party." *Id.* at 9.

The Amended Complaint adequately alleges facts that constitute strong circumstantial evidence of severe recklessness on the part of Schlesinger. The Amended Complaint identifies circumstances indicating that Schlesinger was aware of Blackburn's extensive involvement in Treaty's operations. For example, in *SEC v. Enter. Sols., Inc.*, the Southern District of New York held that a corporate officer acted with scienter by knowingly and intentionally concealing a consultant's management role and equity

interest in the company, where the consultant had a history of criminal and regulatory violations. 142 F. Supp. 2d 561, 574 (S.D.N.Y. 2001). The court found that the corporate officer knew that the consultant was soliciting private investors, arranging loans, negotiating with a takeover target, and participating in the preparation of a registration statement. *Id*. The corporate officer also knew that the consultant had interviewed him and negotiated his contract on behalf of the company. *Id.* Here, the SEC alleges similar facts. The allegations in the Amended Complaint are distinguishable from those in *Tuchman*. In *Tuchman*, the plaintiffs alleged that corporate officers made contradictory statements regarding the corporation's commitment to quality, the adequacy of the testing of corporate software, the reasons for corporate telephone network outages, and the reasons for the corporation's economic downturn. 14 F.3d at 1069. The Fifth Circuit found these allegations insufficient to indicate conscious behavior, noting that the plaintiffs failed to allege any facts that show the corporate officers' statements were belied by their actual knowledge of contradictory facts. *Id.* Here, however, the Amended Complaint alleges facts that make it reasonable to believe that Schlesinger knew that Treaty's Forms 10-K in 2011 and 2012 were materially misleading when he signed them.

Accepting all factual allegations in the Amended Complaint as true, the Court concludes that the facts alleged, taken

26

collectively, support an inference of scienter. Because this action is not governed by the PSLRA, the inference of scienter is not required to be "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. For this reason, the Court need not consider plausible nonculpable explanations for Schlesinger's conduct. The Amended Complaint alleges facts that show Schlesinger's motive and constitute strong circumstantial evidence of his severe recklessness. Accordingly, the Amended Complaint sufficiently pleads scienter to survive a Rule 9(b) motion.

Likewise, the Amended Complaint properly states a claim under Section 17(a)(2) and (3) of the Securities Act. Unlike Section 17(a)(1), scienter is not an element of a claim under Section 17(a)(2) or (3). *Meadows v. SEC*, 119 F.3d 1219, 1226 n.15 (5th Cir. 1997) (citing *Aaron*, 446 U.S. at 697). To plead violations of these subsections, the plaintiff need only show that the defendant acted with negligence. *Id.; Aaron*, 446 U.S. at 702. Here, the Amended Complaint alleges that Schlesinger obtained money by means of an omission of material fact, which deceived the investing public. Further, the Amended Complaint alleges that Schlesinger owed a fiduciary duty to the company and the shareholders to ensure that Treaty's SEC filings that he signed were complete and accurate. (Rec. Doc. 97, at 11.) These allegations are sufficient to show that Schlesinger was at least negligent in signing Treaty's

public filings that failed to disclose Blackburn's role in the company.

**B.   Aiding and Abetting Reporting Violations Under Exchange Act Section 16(a) and Rules 12b-20, 13a-1, 13a-11, and 13a-13**

The SEC claims that Schlesinger aided and abetted Treaty's violations of Section 13(a) and Rules 12b-20, 13a-1, 13a-11, and 13a-13 of the Exchange Act. Section 13(a) and Rules 13a-1, 13a-11, and 13a-13 require issuers of registered securities to file with the SEC annual reports on Form 10-K, current reports on Form 8-K, and quarterly reports on Form 10-Q. *See* 15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13. In addition, Rule 12b-20 requires the issuer to disclose any material information as may be necessary to ensure that the reports are not misleading. 17 C.F.R. § 240.12b-20. The reporting provisions of the Exchange Act are "clear and unequivocal," and satisfied only by the filing of complete, accurate, and timely reports. *SEC v. IMC Int'l, Inc.*, 384 F. Supp. 889, 893 (N.D. Tex. 1974).

Section 20(e) of the Exchange Act authorizes the SEC to bring claims for aiding and abetting primary violations of the federal securities laws. *See* 15 U.S.C. § 78t(e). Section 20(e) was adopted as part of the PSLRA in 1995; however, it codified the approach taken by most federal courts, which had long recognized the ability to sue aiders and abettors for violations of securities laws. For example, in *Abbott v. Equity Group, Inc.*, the Fifth Circuit applied

28

a three-part test for aiding-and-abetting liability, which required the plaintiff to show "(1) that the primary party committed a securities violation; (2) that the aider and abettor had 'general awareness' of its role in the violation; and (3) that the aider and abettor knowingly rendered 'substantial assistance' in furtherance of it." 2 F.3d 613, 621 (5th Cir. 1993). The Fifth Circuit in *Abbott* explained that underlying the second and third elements "is a single scienter requirement that varies on a sliding scale from 'recklessness' to 'conscious intent.'" *Id.* Generally, the plaintiff must show conscious intent. *Id.* However, if there is a "special duty of disclosure" or "evidence that the assistance to the violator was unusual in character and degree," then a recklessness standard applies. *Id.*

When Congress first passed the PSLRA, Section 20(e) provided that "any person that *knowingly provides substantial assistance* to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(e) (2000) (emphasis added). However, in 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, which amended Section 20(e) and added the phrase "or recklessly" to satisfy the scienter requirement in aiding-and-abetting cases.

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat 1376 (2010).

The amendment to Section 20(e) was intended to correct the holding of a growing number of courts "that knowingly means actual knowledge, rather than recklessness." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 801 (11th Cir. 2015) (quoting H.R. Rep. No. 111-687(I), at 80 (2010)). The amendment clarifies that "recklessness is sufficient for bringing an aiding and abetting action." *Id.* Therefore, the amendment to Section 20(e) modifies the three-part test for aiding-and-abetting liability: the SEC must show (1) that the primary party committed a securities violation; (2) that the aider and abettor had "general awareness" of its role in the violation; and (3) that the aider and abettor knowingly *or recklessly* rendered "substantial assistance" in furtherance of it. *Cf. Abbott*, 2 F.3d at 621. Although the SEC may satisfy the second and third elements by showing conscious intent; the SEC is only required to show recklessness. *See* 15 U.S.C. § 78t(e).

In the instant case, the SEC has adequately alleged that Schlesinger aided and abetted Treaty's violations of Section 13(a) of the Exchange Act and the rules thereunder. The Amended Complaint alleges that Treaty violated the reporting provisions by filing reports on Forms 10-K, 10-Q, and 8-K that failed to disclose Blackburn's control of the company and which contained materially

misleading statements about the purported Belize oil strike. (Rec. Doc. 97, at 10-11.) As discussed above, the allegations in the Amended Complaint, taken as true, adequately allege that Schlesinger acted recklessly by signing Treaty's Forms 10-K in 2011 and 2012, which failed to disclose Blackburn's significant role. Accordingly, the Amended Complaint sufficiently alleges that by signing Treaty's misleading Forms 10-K, Schlesinger aided and abetted Treaty's violations.

## C.   Reporting Violations Under Exchange Act Section 16(a) and Rule 16a-3

The SEC claims that Schlesinger violated Section 16(a) and Rule 16a-3 of the Exchange Act. Section 16(a) of the Exchange Act demands that "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to section 78*l* of this title, or who is a director or an officer of the issuer of such security," must file ownership statements with the SEC. 15 U.S.C. § 78p(a)(1). These include initial ownership statements on Form 3, statements disclosing changes in beneficial ownership on Form 4, and annual statements on Form 5. Rule 16a-3 contains the requirements for such ownership statements. *See id.* § 78p(a)(2); 17 C.F.R. § 240.16a-3.

To establish a violation of Section 16(a), the SEC must show that Schlesinger was an officer, director, or 10% beneficial owner

31

and that he did not file the required statements disclosing his ownership of or transactions in the equity securities of the company. *See SEC v. e-Smart Techs., Inc.*, 82 F. Supp. 3d 97, 104 (D.D.C. 2015). While it appears that the Fifth Circuit has not determined whether scienter is an element that the SEC must prove to establish a violation of Section 16(a), numerous district courts have consistently held that Section 16(a) does not require a showing of scienter and have treated it as a strict-liability provision. *See, e.g., id.* (collecting cases).[7]

In the instant case, the SEC claims that, at various points in time, Schlesinger failed to make required filings with the SEC regarding his ownership of Treaty stock. (Rec. Doc. 97, at 24.) In support of this claim, the Amended Complaint alleges that Schlesinger was an officer and director of Treaty from November 2011 through September 2013.[8] *Id.* at 5. Further, the Amended Complaint alleges that Schlesinger sold Treaty securities and received Treaty stock awards and shares. *Id.* at 24-25. Lastly, the SEC claims that Schlesinger failed to file the required reports of ownership and changes of ownership of common stock and other equity securities of Treaty. *Id.* For example, the SEC claims that

---

[7] Although Schlesinger argues that the SEC fails to allege that he possessed the requisite scienter for a Section 16(a) violation, he fails to cite a single case in which a court held that Section 16(a) requires a showing of scienter.
[8] The Amended Complaint also alleges that Schlesinger served as a consultant from May 2011 through November 2011, during which time he sold Treaty securities and received Treaty shares as commission for stock sales. (Rec. Doc. 97, at 5, 20.) However, it is unclear whether the SEC is alleging that Schlesinger was subject to the disclosure requirements of Section 16(a) during this time.

Schlesinger purchased 20,000,000 Treaty shares and later sold these shares, yet never reported his ownership or change of ownership as required by Section 16(a). *Id.* Taking these allegations as true, the Court concludes that the SEC states a plausible claim that Schlesinger violated Section 16(a) and Rule 16a-3 of the Exchange Act.

Schlesinger's arguments in opposition are misplaced. First, Schlesinger argues that the SEC fails to adequately allege that the was an officer or director at the time he allegedly received 2,000,000 Treaty shares on August 8, 2011. Schlesinger claims that he was not an "officer" as defined by Rule 16a-1 during the time he served as a consultant, and he argues that the Amended Complaint "clearly insinuates that shortly after his acquisition of the shares, he transferred them." (Rec. Doc. 105-2, at 25.) Accordingly, Schlesinger argues that he was no longer in possession of this stock by the time he became an officer and director of Treaty. *Id.* Schlesinger also argues that the SEC fails to adequately plead that he violated Section 16(a) when he later received and sold 20,000,000 Treaty shares. Schlesinger points out that the Amended Complaint alleges that this transaction took place between July 2011 and February 2014, which leaves an "approximately 5 month gap (between September 2013 – February 2014) where this second transaction could have occurred and Schlesinger was not an officer or director." *Id,* at 25-26. However, these arguments are

33

inappropriate at this stage of the litigation on a motion to dismiss, where the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the SEC.

## D.  Offering or Selling Unregistered Securities in Violation of Securities Act Section 5

The SEC claims that Schlesinger violated Section 5 of the Securities Act, which prohibits the interstate offer or sale of securities without an effective registration statement. *See* 15 U.S.C. § 77e(a). To establish a violation of Section 5, the SEC must show that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce. *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972). Section 5 is a strict liability statute; there is no need to prove scienter. *Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980). Once the SEC introduces evidence that a defendant has violated the registration provisions, the defendant then has the burden of proof in showing entitlement to an exemption.[9] *See Doran v. Petroleum Mgmt. Corp.*, 545 F.2d 893,

---

[9] In his reply, Schlesinger argues that the SEC fails to state a claim against him under Section 5 because the Amended Complaint fails to allege that he is an underwriter, issuer, or dealer. (Rec. Doc. 120, at 8.) Schlesinger points out that Section 4 of the Securities Act exempts from the registration requirements transactions by any person other than an issuer, underwriter, or dealer. *Id* (citing 15 U.S.C. § 77d(1)). However, the burden is on Schlesinger to show his entitlement to this exemption; the SEC need not allege facts showing that no exemption applies.

899 (5th Cir. 1977) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953)).

Although Section 5 provides that it is unlawful for any person to sell or offer to sell an unregistered security, liability under Section 5 is not limited to the person or entity that ultimately passes title to the security. *SEC v. Murphy*, 626 F.2d 633, 649 (9th Cir. 1980). "Instead, courts have established the concept of 'participant' liability to bring within the confines of § 5 persons other than sellers who are responsible for the distribution of unregistered securities." *Id.* A defendant may be liable as a participant in a Section 5 violation if the defendant's role in the transaction is significant. *Id.* at 648. A defendant plays a significant role when he is both a "necessary participant" and "substantial factor" in the sales transaction. *Id.* at 652.

Here, the SEC claims that Schlesinger directly sold or offered to sell unregistered Treaty securities and that the offer or sale was made through the use of interstate commerce or the mails. (Rec. Doc. 97, at 17, 20.) In particular, the Amended Complaint alleges that Schlesinger "engaged in the illegal offer and sale of Treaty securities [through] Form S-8 offerings of registered, unrestricted stock to ineligible recipients." *Id.* at 17. For example, the SEC claims that Schlesinger transferred 2,000,000 Form S-8 shares he illegally received in August 2011 as commission

for stock sales to two companies controlled by Gwyn without ensuring that the shares were received as restricted. *Id.* at 20.

Schlesinger argues that the Amended Complaint fails to allege that he was a necessary participant and substantial factor in the sale of unregistered securities. (Rec. Doc. 105-2, at 27.) For example, Schlesinger points out that the SEC alleges that Treaty illegally issued 2,000,000 shares to him as payment for commissions. Schlesinger claims that if these shares were illegally registered from the onset then there was no reason to issue the shares to him rather than issue them directly to Gwyn. *Id.* Therefore, Schlesinger argues that his role was not necessary. *Id.* However, the SEC argues that the "necessary participant" and "substantial factor" test is irrelevant because the Amended Complaint alleges that Schlesinger is liable as a direct seller. The Court agrees. The SEC has alleged sufficient facts to state a plausible claim against Schlesinger for violation of Section 5.

In conclusion, the Court finds that the SEC has sufficiently pleaded its claims against Schlesinger so as to avoid dismissal at this juncture.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss* **(Rec. Doc. 105)** is **DENIED**.

New Orleans, Louisiana, this 28th day of December, 2015.

36

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE