UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SECURITIES AND
EXCHANGE COMMISSION

CIVIL ACTION

VERSUS

No.: 15-2451

RONALD L. BLACKBURN, ET
AL.

SECTION: "J" (1)

## ORDER & REASONS

Before the Court are cross-motions for summary judgment filed by the Securities and Exchange Commission ("SEC") **(Rec. Doc. 183)** and Defendant Samuel E. Whitley **(Rec. Doc. 192)**. Both motions are opposed (Rec. Docs. 208, 210); Defendant Whitley has also filed objections to the SEC's summary judgment evidence (Rec. Doc. 229). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the SEC's motion should be **GRANTED** and that Defendant Whitley's motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This action arises from alleged violations of securities laws in connection with the operation of Treaty Energy Corp. ("Treaty"), an oil and gas production company incorporated in Nevada and located in New Orleans, Louisiana. The facts of this case are set forth more fully in the Court's earlier opinion granting partial summary judgment in favor of the SEC against Ronald Blackburn, Andrew Reid, Bruce Gwyn, and Michael Mulshine (collectively, the "Officer Defendants"). *See SEC v. Blackburn*, No. 15-2451, 2019 WL 6877655, at *1-9 (E.D. La. Dec. 17, 2019).

Defendant Whitley is a licensed Texas attorney and managing partner of Whitley LLP Attorneys at Law, a Houston-based law firm. From approximately 2009 to 2013, Whitley was engaged as outside counsel to provide primarily securities-based legal services to Treaty; thus, the Officer Defendants described him as Treaty's "SEC attorney."[1] The SEC's allegations against Whitley concern his issuance of opinion letters that allowed the Officer Defendants to sell Treaty stock that was otherwise restricted, specifically, unregistered shares of Treaty stock as well as shares registered using Form S-8.

Generally, securities cannot be sold unless registered with the SEC. *See* 15 U.S.C. § 77e. A number of exemptions apply to this requirement; of primary relevance here is the exemption that excludes "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1).

"[A]n S-8 registration form can be used by a company only to issue stock as a means of compensating consultants for bona fide services not connected with raising capital." *SEC v. Phan*, 500 F.3d 895, 903 (9th Cir. 2007). Thus, where shares are improperly registered using Form S-8, i.e., because the shares were issued as compensation for capital-raising purposes, then the shares are effectively unregistered and subject to a restriction on trading. *See id.* at 903-04.

Companies that have publicly-traded securities use transfer agents to keep track of the owners of the securities. Shares sold by the issuer or by control persons outside of a registered public offering typically include a restrictive legend on the face

---

[1] (Reid Tr., Rec. Doc. 182-2, at 57).

of the certificate, indicating that the shares cannot be sold without complying with the registration requirements. *Use of Legends and Stop-Transfer Instructions as Evidence of Nonpublic Offering*, Securities Act Release No. 5121, 1971 WL 120470, at *2 (Feb. 1, 1971). "As a practical matter, when dealing with securities that have been subject to . . . transfer restrictions, transfer agents generally require an opinion letter from counsel that the restrictions no longer apply before [reissuing the shares without the restrictive legend and] allowing a transfer of the securities." Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 4:106 (2019).

During the relevant period, January 2009 to September 2013, Treaty was subject to the reporting requirements of Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Treaty was a "penny stock" company traded over-the-counter on OTC Pink, an inter-dealer electronic quotation and trading system for registered and unregistered securities. OTC Pink does not have listing requirements for the stocks quoted on its system. No registration statements for Treaty were ever filed with the SEC, except for purported Form S-8 registrations for an employee benefit plan, each of which included an opinion letter written by Whitley.[2]

The SEC's allegations focus on four particular letters authored by Whitley: (1) a February 14, 2013 letter that allowed 12,160,026 unregistered shares issued to Blackburn to have their restrictive legend removed and become free trading (the "Blackburn letter");[3] (2) an October 10, 2011 letter that allowed 487,805 S-8 shares

---

[2] (2011 Form S-8, Rec. Doc. 182-12, at 171-77; 2012 Form S-8, Rec. Doc. 182-15, at 19-30; 2013 Form S-8, Rec. Doc. 182-15, at 31-44).

[3] (Rec. Doc. 182-23, at 3-4).

issued to David V. Smith to become free trading (the "Smith letter");[4] and (3) two letters, dated August 23, 2012,[5] and February 20, 2013,[6] that allowed Treaty to register 85,000,000 shares using Form S-8.

The SEC filed its complaint on December 15, 2014 in the Eastern District of Texas. The case was subsequently transferred to the undersigned in July 2015. In February 2017, the Court issued an Agreed Partial Judgment as to Defendant Treaty, enjoining Treaty and its officers and employees from violating securities laws.[7] The Court also ordered disgorgement, with any civil penalty amount to be determined upon motion by the SEC.[8] In March 2017, the Court issued another Agreed Final Judgment as to Lee Schlesinger, requiring disgorgement of $92,498.00.[9] The SEC and Defendant Whitley filed their cross-motions for summary judgment thereafter.

## PARTIES' ARGUMENTS

The SEC claims that Whitley violated Section 5 of the Securities Act of 1933: (1) by authoring the Blackburn letter, which allowed Blackburn's restricted shares to become free trading; and (2) by providing legal opinions for the illegal issuance of unrestricted S-8 shares.[10] The SEC contends that Whitley was a "necessary participant" and "substantial factor" in the sale of Blackburn's unregistered shares

---

[4] (Rec. Doc. 182-22, at 37-39).
[5] (Rec. Doc. 182-15, at 30).
[6] *Id.* at 43.
[7] (Rec. Doc. 157).
[8] *Id.* at 5-6.
[9] (Rec. Doc. 207).
[10] The SEC frames its second claim against Whitley as "aiding and abetting" Treaty's violations of Section 5. (Rec. Doc. 97, at 26). However, as explained *infra*, aiding and abetting is not a distinct cause of action but derives from Section 5's prohibition against indirectly selling or delivering unregistered securities. *See* 15 U.S.C. § 77e(a), (c).

because his opinion letter was required for their restrictive legends to be removed, thus enabling the sale of the shares. Likewise, the SEC contends that Whitley improperly authored opinion letters allowing Treaty to register shares using Form S-8 that were actually issued for capital-raising purposes and therefore was a necessary participant and substantial factor in the distribution of those shares. The SEC further argues no exemption to Section 5 applied to these distributions.

Defendant Whitley contends that he did not violate Section 5 because he was not a necessary participant and substantial factor in Treaty's allegedly improper transactions. First, Whitley argues that there is no authority for holding an attorney who writes an opinion letter allowing for the sale of unregistered stock to be a necessary participant and substantial factor of an unlawful sale. Rather, Whitley argues that one must be a "motivating force and play an integral role in the sale" to be held liable.[11] As such, Whitley asserts that his involvement with Treaty did not rise to the level of negotiating or structuring transactions or receiving the proceeds of unregistered offerings, and therefore he contends he is entitled to summary judgment on the SEC's claims for violating Section 5. Further, Whitley argues that there is no cause of action for aiding and abetting a violation of Section 5. Finally, Whitley contends that the summary judgment evidence in this case demonstrates that the opinions he rendered in connection with Treaty's sale of stock were correct and that he did not aid and abet Treaty, or any other party, in violating Section 5.

---

[11] (Rec. Doc. 192, at 12).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *accord Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue at trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. DEFENDANT WHITLEY'S OBJECTIONS

Whitley objects to the following evidence presented by the SEC in conjunction with its opposition to his motion for summary judgment: (1) a September 1, 2009 opinion letter he authored to Computershare, in which he opined that the restrictive legend on certain Treaty stock held by Mulshine could be removed;[12] and (2) the SEC's responses to his interrogatories and requests for admission.[13]

Whitley objects to the letter on grounds that it has not been authenticated, it was not identified by the SEC as conduct that makes him a necessary participant or substantial factor in any sale of unregistered shares, and any claim based on the letter is barred by the statute of limitations. However, evidence need not be authenticated to be competent summary judgment evidence; it need only be capable of being presented in a form that would be admissible at trial. *See Lee v. Offshore*

---

[12] (Rec. Doc. 210-1, at 11-12).
[13] *Id.* at 13-25.

*Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017). Further, the SEC does not present the evidence for the purposes that Whitley finds objectionable; it offers the letter to support its argument that Whitley knew Mulshine was untrustworthy and acted deceptively in obtaining opinion letters from him.[14] Whitley's objection to this letter is denied.

Whitley objects to the SEC's own answers to interrogatories and requests for admissions as inadmissible hearsay because the SEC has not shown that the answers are based on personal knowledge. However, it appears that the SEC does not actually rely on these answers in its motion or opposition. Accordingly, the Court will not consider them. *See* FED. R. CIV. P. 56(c)(1)(A).

## II.    SECTION 5 OF THE SECURITIES ACT

Section 5(a) and (c) of the Securities Act make it unlawful to offer or sell a security in interstate commerce unless a registration statement has been filed or the transaction qualifies for an exemption from registration. 15 U.S.C. § 77e(a), (c); *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). Section 5 creates liability for any sale of securities where a registration statement is not in effect and does not limit liability to initial distribution. *Phan*, 500 F.3d at 902.

To establish a prima facie case against a defendant for violating Section 5, the SEC must produce competent summary judgment evidence establishing that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell these securities; and (3) interstate transportation or

---

[14] (Rec. Doc. 210, at 12-13).

communication and the mails were used in connection with the sale or offer of sale. *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972). Section 5 is a strict liability statute; there is no need to prove scienter. *See Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980) ("The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part.").

Moreover, the prohibition on the sale or attempted sale of securities has broad reach. *CMKM Diamonds, Inc.*, 729 F.3d at 1255 (citing *SEC v. Murphy*, 626 F.2d 633, 649 (9th Cir. 1980)) ("[L]iability under Section 5 is not limited to the person or entity who ultimately passes title to the security."). It extends to significant participants in the sale, those who were both necessary for the transaction and a "substantial factor" in bringing it about. *Id.* (quoting *Phan*, 500 F.3d at 906); *see also SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004); *SEC v. Holschuh*, 694 F.2d 130, 139 (7th Cir. 1982); *SEC v. ConnectAJet.com, Inc.*, No. 09–1742, 2011 WL 5509896, at *3 (N.D. Tex. Nov. 9, 2011). A defendant is a necessary participant if "but for" his participation in the distribution of unregistered securities, the sale transaction would not have taken place. *Murphy*, 626 F.2d at 651. Further, a defendant is a substantial factor in the distribution of unregistered securities if his overall conduct and participation is not "de minimis." *CMKM Diamonds*, 729 F.3d at 1257. Whether a defendant is a substantial factor in the distribution is a question of fact that requires a case-by-case analysis of the nature of the securities scheme and the defendant's participation in it. "A participant's title, standing alone, cannot determine liability under Section 5,

because the mere fact that a defendant is labeled as an issuer, a broker, a transfer agent, a CEO, a purchaser, or an attorney, does not adequately explain what role the defendant actually played in the scheme at issue." *Id.* at 1258.

If the SEC establishes a prima facie case, then the burden shifts to the Defendant to prove that he is entitled to an exemption. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953); *Cont'l Tobacco*, 463 F.2d at 156. Exemptions are narrowly construed against the claimant. *Murphy*, 626 F.2d at 641.

While Whitley disputes whether aiding and abetting a Section 5 violation constitutes a cognizable cause of action, several courts have at least nominally recognized that it does. *See Wasson v. SEC*, 558 F.2d 879, 887 (8th Cir. 1977); *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1046 (2d Cir. 1976); *SEC v. Dolnick*, 501 F.2d 1279, 1283 (7th Cir. 1974); *SEC v. Nat'l Bankers Life Ins. Co.*, 324 F. Supp. 189, 194 (N.D. Tex.) (citing *Nees v. SEC*, 414 F.2d 211, 220 (9th Cir. 1969)), *aff'd*, 448 F.2d 652 (5th Cir. 1971). However, unlike other causes of action for aiding and abetting securities law violations, *see* 15 U.S.C. § 78t(e); *Abbott v. Equity Grp. Inc.*, 2 F.3d 613, 621 (5th Cir. 1993), aiding and abetting is not a distinct cause of action for violations of Section 5; rather, it is rooted in Section 5's imposition of liability on those who indirectly sell or deliver unregistered securities, *see Universal Major*, 546 F.2d at 1046-47 (rejecting argument that there is no liability for aiding and abetting Section 5 violations because, "[b]y its terms, Section 5 makes it unlawful, 'directly or indirectly', to sell unregistered stock"). Thus, the Court concludes that the necessary participant and substantial factor test is appropriate for the SEC's claim that Whitley

aided and abetted violations of Section 5 by Treaty. *See SEC v. N. Am. Research &*
*Dev. Corp.*, 424 F.2d 63, 81-82 (2d. Cir. 1970) (holding imposition of liability for aiding
and abetting violation of Section 5 appropriate where a defendant's "participation in
taking 'steps necessary to the distribution' was not so slight that it could be described
as de minimis").

### A. Whitley was a Necessary Participant and Substantial Factor in the Illegal Distribution of Blackburn's Shares

Whitley first argues that he cannot be a necessary participant and substantial
factor to an illegal distribution "in the absence of evidence that the attorney
participated in negotiations or arrangements for the sale,"[15] relying on *Pharo v.*
*Smith*, 621 F.2d 656, 665-67 & n.8 (5th Cir. 1980), *overruled by Pinter v. Dahl*, 486
U.S. 622, 649-54 (1988). However, in *Pharo* the Fifth Circuit was considering Section
12 of the Securities Act, which creates a private cause of action for Section 5 claims.
*See id.* at 664-65 & n.2. Section 12 limits liability to sellers and offerors, whereas the
scope of Section 5 is broader and specifically includes participant liability. *See Pinter*,
486 U.S. at 650 & n.26. Following *Pinter*, courts have continued to apply the
necessary participant and substantial factor test to Section 5 claims. *See CMKM*
*Diamonds*, 729 F.3d at 1256 n.5; *Calvo*, 378 F.3d at 1215; *see also Geiger v. SEC*, 363
F.3d 481, 488 (D.C. Cir. 2004).

Moreover, the facts of *Pharo* are distinguishable. There, the defendant, who
did not sell stock directly to the plaintiffs but had owned stock that was repurchased
by the issuer before being resold to the plaintiffs, was alleged to have violated Section

---

[15] (Rec. Doc. 192-20, at 12).

12 by failing to discover that the issuer was reselling the stock in violation of federal securities law and its agreement with the defendant. 621 F.2d at 668. Predictably, the court held that "the proof falls woefully short of demonstrating that [the defendant] played a substantial or integral role in bringing about the sales to plaintiffs." *Id.*

Several courts have found attorneys who improperly issue opinion letters to be liable under Section 5. In *CMKM Diamonds*, the district court concluded that an attorney who wrote opinion letters falsely claiming the stocks they pertained to qualified for an exemption was a necessary participant because the sale would not have happened without his participation, as "[h]is letters enabled the removal of the restrictive legends which allowed them to be sold." *SEC v. CMKM Diamonds, Inc.*, No. 08–0437, 2011 WL 3047476, at *2 (D. Nev. July 25, 2011), *aff'd in part, rev'd in part on other grounds*, 729 F.3d 1248 (9th Cir. 2013). The district court also concluded that the attorney was a substantial factor because "the writing of opinion letters justifying the removal of the restrictive legends is not a de minimis act: [the attorney's] participation was a crucial and integral role in the overall scheme to sell unregistered securities." *Id.* Likewise, in *SEC v. Greenstone Holdings, Inc.*, an attorney who wrote opinion letters that were "necessarily false" because the promissory notes they referred to did not exist was found to be liable under Section 5 because the transfer agent "would not have issued the shares without [the attorney's letter]." 954 F. Supp. 2d 211, 213-14 (S.D.N.Y. 2013), *aff'd sub nom. SEC v. Frohling*, 654 F. App'x 523 (2d Cir. 2016).

Whitley attempts to distinguish these cases on the ground that the facts of those cases "suggest[] the lawyer was involved in the scheme at issue."[16] This argument ignores the fact that Section 5 is a strict liability statute and, therefore, the SEC need not prove he acted intentionally. *See Swenson*, 626 F.2d at 424. To the extent Whitley contends his lack of involvement in the broader scheme shows he was not a substantial factor in the distribution, the Court disagrees.

In *CMKM Diamonds*, the Ninth Circuit reversed the grant of summary judgment against two transfer agents whose only involvement in the distributions at issue was issuing shares without the restrictive legends after receiving two attorney opinion letters, holding that such conduct was insufficient to establish liability as a matter of law. 729 F.3d at 1259. The Ninth Circuit held that the transfer agents' role was insubstantial because it was limited to "perform[ing] largely ministerial tasks in reliance upon attorney opinion letters." *Id.* at 1256. However, the Ninth Circuit affirmed the district court's imposition of liability against the attorney who improperly authored the opinion letters. *See id.* at 1260-62.

Here, Whitley did not merely "'perform mechanical acts without which there could be no sale.'" *Id.* at 1255 (quoting *Murphy*, 626 F.2d at 650). Writing the opinion letter required Whitley to exercise his skill and expertise as an attorney and determine whether Blackburn's shares qualified for an exemption from registration. This is a far cry from performing a merely administrative role that courts have excluded from Section 5 liability as de minimis. *See id.* at 1255-56. Further, Whitley

---

[16] (Rec. Doc. 192-20, at 12 n.7).

was not entitled to rely on the representations of Blackburn or Treaty's officers in good faith and was required to exercise due diligence in making this determination. *See id.* at 1256 n.6.

Finally, Whitley relies on *SEC v. Spongetech Delivery Systems, Inc.*, No. 10–2031, 2011 WL 887940 (E.D.N.Y. Mar. 14, 2011), to argue his participation was "minimal" and therefore he was not a substantial factor in the distribution. However, that case is inapposite, as there the court was considering the propriety of imposing an injunction on the defendant-attorney based on alleged violations of Section 5 as well as the antifraud provisions of securities law, which require a showing of scienter or at least negligence. *See id.* at *13-14.

In the instant case, all the elements of a Section 5 violation are met as to the distribution of Blackburn's unregistered shares. There is no dispute that the lack of registration and interstate commerce elements are met. Whitley authored the Blackburn letter, which was required for the transfer agent to issue the 12,160,026 unregistered shares to Blackburn with the restrictive legend removed, on February 14, 2013.[17] The shares were reissued to Blackburn, who then sold the shares on February 20, 2013.[18] Thus, Whitley was a necessary participant in the distribution because but for his authoring the letter, the distribution would not have taken place. *See CMKM Diamonds*, 2011 WL 3047476, at *2; *Greenstone Holdings*, 954 F. Supp. 2d at 214. Additionally, he was a substantial factor in the distribution because "the writing of opinion letters justifying the removal of the restrictive legends is not a de

---

[17] (Rec. Doc. 182-23, at 3-4).
[18] (Rec. Doc. 182-8, at 33-34).

minimis act," and therefore Whitley played "a crucial and integral role" in the distribution. *CMKM Diamonds*, 2011 WL 3047476, at *2.

### B. No Exemption Applies to the Sale of Blackburn's Unregistered Shares

Having found that Whitley was a necessary participant and substantial factor in the distribution of Blackburn's unregistered shares, the burden now shifts to Whitley to show that an exemption applied to this transaction. *See Cont'l Tobacco*, 463 F.2d at 156. He contends that the transaction was exempt under Securities Act Section 4(a)(1) and Rule 144, which exempt transactions "by a person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1); 17 C.F.R. § 230.144.

An issuer is defined as any "person who issues or proposes to issue any security." 15 U.S.C. § 77b(a)(4). An underwriter is "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security." § 77b(a)(11). Further, a person is not considered an underwriter if that person is not an affiliate of the issuer and has not been for the past three months and at least six months have elapsed since that person acquired the security from the issuer. 17 C.F.R. § 230.144(b)(1)(i), (d)(1)(i).

Whitley contends that Blackburn was not an underwriter because he was not an affiliate of Treaty on February 14, 2013. However, Blackburn admitted that he sold these shares on Treaty's behalf and the money from sale went to Treaty.[19] Thus, he was an underwriter because he sold the shares for Treaty, the issuer, in connection with their distribution. *See* § 77b(a)(11). Blackburn also admitted that he owned more

---

[19] (Blackburn Tr., Rec. Doc. 182-10, at 112).

than 10% of Treaty's stock "through at least most of 2013."[20] Additionally, the Officer Defendants admitted that Blackburn was an affiliate of Treaty during 2012,[21] which also qualifies him as an underwriter for this transaction. *See* 17 C.F.R. § 230.144(b)(1)(i). Whitley has failed to carry his burden of showing this exemption applies.

Whitley further contends that, if Blackburn was an affiliate, the Rule 144(e) exemption applies. "Rule 144(e)(1) permits sales by affiliates provided that the aggregate amount sold, combined with all sales of other securities of the same class (whether restricted or not) sold by the affiliate within the preceding three months, does not exceed the specified volume limit." Hazen, *supra*, § 4:106. The SEC has admitted that the requirements of Rule 144(e) were met for this transaction.[22] However, to take advantage of this exemption, Blackburn was required to provide public notice by filing Form 144 with the SEC. *See* 17 C.F.R. § 230.144(h); *see also Tod A. Ditommaso, Esq.*, Release No. 4698, 2017 WL 10777222, at *2 (ALJ Mar. 21, 2017) ("[A]ny person who intends to sell securities in reliance on Rule 144 must file a Form 144 with the Commission."). As Whitley has not provided evidence that Blackburn filed Form 144 in connection with this distribution, he has failed to show this exemption applies.

Moreover, the preliminary note to Rule 144 provides: "The Rule 144 safe harbor is not available to any person with respect to any transaction or series of transactions

---

[20] *Id.* at 111.
[21] (Rec. Doc. 182-18, at 54).
[22] (Rec. Doc. 192-2, at 10).

that, although in technical compliance with Rule 144, is part of a plan or scheme to evade the registration requirements of the Act." 17 C.F.R. § 230.144. Blackburn refused to become an officer or director of Treaty because he knew his prior felony convictions prevented him from doing so,[23] and his formal title of "consultant" allowed him to exploit this exemption while distributing millions of unregistered shares on Treaty's behalf and maintaining control over several aspects of Treaty's business.[24] The SEC has presented evidence that Blackburn distributed at least 380 million of the unregistered shares issued to him to more than 200 individuals and entities;[25] accordingly, the Court granted summary judgment to the SEC on its claim that Blackburn violated Section 5 by distributing these shares.[26] Thus, regardless of whether the distribution of the 12,160,026 unregistered shares met the technical requirements of Rule 144, that exemption is not applicable to this distribution because it was part of a plan to evade the registration requirements of the Securities Act.[27]

Accordingly, the SEC is entitled to summary judgment on its claim that Whitley violated Section 5 of the Securities Act by authoring the Blackburn letter.

---

[23] (Blackburn Tr., Rec. Doc. 182-10, at 100).

[24] (*See* Rec. Doc. 227, at 40-41).

[25] (Hunter Decl., Rec. Doc. 182-8, at 15, 17-18, 29-34; Blackburn Tr., Rec. Doc. 182-10, at 130; *see also* Mulshine Ledger, Rec. Doc. 182-8, at 35-37).

[26] (Rec. Doc. 227, at 22-24).

[27] Additionally, Section 4(a)(1) "was intended to exempt only trading transactions between individual investors with respect to securities already issued and not to exempt distributions by issuers or acts of other individuals who engage in steps necessary to such distributions." Hazen, *supra*, § 4:106 (citation omitted); *see also SEC v. Chinese Consol. Benev. Ass'n*, 120 F.2d 738, 741 (2d Cir. 1941). Given Blackburn's high degree of control over Treaty and that he was essentially acting as an agent of Treaty in distributing these shares, with the proceeds going into Treaty's bank accounts or to pay Treaty's expenses, (*see* Rec. Doc. 227, at 40-41), the Court concludes that application of this exemption here would not comply with congressional intent.

## C. Whitley Violated Section 5 by Writing the Smith Letter

The SEC contends that Whitley violated Section 5 by writing an opinion letter allowing a consultant named David V. Smith to resell 487,805 S-8 shares (the "Smith letter") because the shares were improperly issued to Smith to satisfy a past debt rather than for bona fide consulting services. In support of its argument, the SEC points to a "Stock Award Agreement" between Treaty and Smith, dated May 27, 2011, which provides that the share issuance "was made in satisfaction of Treaty's debt obligation to Smith."[28] While the agreement purports to be for "certain business services, support and equipment" provided to Treaty by Smith, there is a handwritten notation on the document that reads "$12,500 loan repaid."[29] The SEC has also provided evidence of a check dated December 31, 2010, for $12,500 issued by Smith to Rampant Leon Financial Group LLC, an entity used by Blackburn and Reid to raise funds for Treaty.[30] The memo line on the check reads "Maturity date 3-16-11," which supports the SEC's assertion that the check was a loan.[31] Thus, the SEC contends that Smith's S-8 shares were issued for capital-raising purposes and Whitley therefore violated Section 5 by writing an opinion letter that allowed Smith to resell these shares because there was no valid registration statement in effect.

Whitley contends that a different document, a "Business Consultant Agreement"[32] effective May 1, 2011, and amended August 26, 2011, was the operative

---

[28] (Rec. Doc. 182-22, at 40).
[29] *Id.*
[30] (Rec. Doc. 182-33, at 4).
[31] *Id.*
[32] (Rec. Doc. 192-1, at 14-16).

agreement between Treaty and Smith referred to by Whitley in the Smith letter. Whitley further contends that, because the SEC admitted that this agreement is the one referred to in the Smith letter,[33] the SEC is precluded from arguing that another document was the agreement of the parties or the subject of the Smith letter.

Whitley's argument fails to recognize that the two agreements are not mutually exclusive. The Business Consultant Agreement is an employment agreement between Treaty and Smith, while the Stock Award Agreement memorializes Treaty's issuance of shares and satisfaction of its debt to Smith. Additionally, the language of the Business Consultant Agreement does not foreclose the possibility that Smith provided Treaty with capital-raising services under the Agreement, as it states that Smith would provide Treaty with the following services: (1) "Business feasibility and start-up issues"; (2) "Business plan development"; (3) "Strategic planning"; and (4) "Financial management and analysis."[34]

The payment provision of the Business Consultant Agreement further undercuts Whitley's argument. It first provides that Smith would receive an "initial fee" of 476,190 shares, which is almost the entire number of shares (487,805) Smith received under the agreement.[35] It then provides: "All other fees will be allocated to [Smith] based on the Lehman Formula on each transaction in Stock, Cash or a combination of each."[36] The Lehman Formula was developed "to calculate fees for underwriting and other capital-raising transactions." Ari Dropkin, *Skin in the Game:*

---

[33] (*See* Rec. Doc. 192-2, at 8).
[34] (Rec. Doc. 192-1, at 14).
[35] *Id.*
[36] *Id.*

*The Promise of Contingency-Based M&A Fees*, 103 Geo. L.J. 1061, 1064 (2015). Thus, under the agreement, Smith would receive a commission for "each transaction" that would be calculated using a method commonly used for investments and payable in cash, stock, or both. Further, although the agreement provides that it "will extend for a period of 12 Months,"[37] there is no evidence that Smith received any compensation other than his initial fee.[38]

Finally, not only has Whitley not presented any evidence that Smith actually performed any consulting services for Treaty, but he admitted at his deposition that he did not know what kind of consulting services Smith provided to Treaty[39] and that he could not recall speaking with Smith or anybody at Treaty about the circumstances surrounding Smith's shares prior to writing the letter.[40] At his deposition, Whitley also acknowledged that he produced the Stock Award Agreement to the SEC during discovery and, therefore, would have seen the handwritten notation prior to writing the Smith letter.[41]

In light of the foregoing, Whitley has failed to create a genuine dispute of material fact as to whether Smith provided bona fide consulting services to Treaty. Because the Form S-8 registration statement was invalid as to Smith's shares, his shares were effectively unregistered, thereby satisfying the first element of a Section 5 claim. *See Phan*, 500 F.3d at 904; *see also SEC v. E. Delta Res. Corp.*, No. 10-CV-

---

[37] *Id.*
[38] (*See* Rec. Doc. 182-8, at 38-39) (only stock issuance to Smith occurred on June 21, 2011).
[39] (Whitley Tr., Rec. Doc. 182-11, at 110-11).
[40] *Id.* at 108.
[41] *Id.* at 111.

310 (SJF)(WDW), 2012 WL 3903478, at *4-5 (E.D.N.Y. Aug. 31, 2012) (finding purported consultant violated Section 5 by selling or offering to sell his S-8 shares where consultant primarily provided capital-raising services and therefore no valid registration statement was in effect), *aff'd*, 550 F. App'x 52 (2d Cir. 2014).

The impetus for the Smith letter was to allow Smith to deposit his shares with his broker so that the shares could be sold; Whitley testified that he prepared the letter at the broker's request, who needed an opinion letter "for their compliance responsibilities."[42] In the letter, Whitley opined that Smith "was eligible to receive shares under" Treaty's employee stock benefit plan because "the services provided by [Smith] were neither capital-raising services nor services that promoted or maintained a market for [Treaty's] securities."[43] Based on this, Whitley concluded that "the Shares may be sold freely without further restrictions relating to the manner or volume of resale."[44] Thus, Whitley was a necessary participant and substantial factor in the distribution of Smith's shares because, as with Blackburn's shares, the letter "allowed them to be sold," and the writing of such letters "is not a de minimis act." *CMKM Diamonds, Inc.*, 2011 WL 3047476, at *2; *cf. SEC v. Ramoil Mgmt., Ltd.*, No. 01 Civ. 9057(SC), 2007 WL 3146943, at *10-11 (S.D.N.Y. Oct. 25, 2007) (holding corporation's general counsel violated Section 5 by filing false opinion

---

[42] *Id.* at 108; (*see also* Smith Letter, Rec. Doc. 182-22, at 37) ("This opinion may be relied upon by you, in your capacity as broker for [Smith], for the sole and express purpose of effecting a sale of the Shares for [Smith].")
[43] (Smith Letter, Rec. Doc. 182-22, at 39).
[44] *Id.*

letters in connection with corporation's Form S-8 because his "sign-off was necessary" for the corporation to register new shares).

Finally, there is no dispute that the interstate commerce element is met. Because the SEC has established a prima facie case for a Section 5 violation, the burden shifts to Whitley to prove that an exemption from registration was available for the offer or sale of the security. Whitley has not argued that any exemption applied to this transaction. Accordingly, the SEC is entitled to summary judgment on this claim.

### D. Whitley was a Necessary Participant and Substantial Factor in the Illegal Distribution of Treaty's Improperly-Registered S-8 Shares to John Bushnell

The SEC contends that Whitley violated Section 5 because he was a necessary participant and substantial factor in the illegal distribution of Treaty's S-8 shares because he provided the necessary legal opinion that allowed Treaty to improperly register shares using its 2012 and 2013 Forms S-8. The Court finds that the SEC has established a prima facie case of a Section 5 violation with respect to Treaty's distribution of five million S-8 shares to John Bushnell.

Whitley wrote an opinion letter dated August 23, 2012, in conjunction with Treaty's 2012 Form S-8 that authorized Treaty to issue up to fifty-five million S-8 shares.[45] Treaty then issued five million S-8 shares to Bushnell on October 4, 2012.[46] Although Treaty's board meeting minutes indicated that the shares were issued to

---

[45] (Rec. Doc. 182-15, at 30).
[46] (Rec. Doc. 182-8, at 38-39).

Bushnell under a "Consulting Agreement" he had with Treaty,[47]  Reid admitted that Bushnell "really didn't have any duties" but "to bring in capital for the company."[48] Likewise, Blackburn could not identify any consulting work that Bushnell performed for Treaty but described him as Treaty's "largest investor."[49] Blackburn testified that he sold the five million shares to Bushnell for $90,000, which represented a "significant discount" from the market price of approximately $175,000 at the time.[50] Bushnell received the five million S-8 shares on October 11, 2012, and within days sold most of them into the market at a profit.[51]

Thus, the first element is met because there was no registration statement in effect, as Bushnell did not provide Treaty with bona fide consulting services. *See E. Delta Res. Corp.*, 2012 WL 3903478, at *4-5. Whitley has not argued or presented any evidence that Bushnell provided any such services to Treaty.

The second element is met because Treaty sold S-8 shares to Bushnell and Whitley was a necessary participant and substantial factor in the distribution. Whitley was a necessary participant because "the 'opinion of counsel as to the legality of the securities being registered, indicating whether they will, when sold, be legally issued, fully paid and non-assessable' is required when a company wishes to register new shares as part of an employee benefit program." *Ramoil*, 2007 WL 3146943, at *10 (quoting 17 C.F.R. § 229.601(b)(5)) (holding corporation's general counsel violated

---

[47] (Rec. Doc. 182-19, at 21).
[48] (Reid Tr., Rec. Doc. 182-11, at 65).
[49] (Blackburn Tr., Rec. Doc. 182-10, at 135).
[50] (*Id.*; *see also* Rec. Doc. 182-19, at 15-16 (emails between Bushnell and Blackburn negotiating sale)).
[51] (John Kevin Bushnell Statement of Account, Rec. Doc. 182-19, at 17).

Section 5 by filing false opinion letters in connection with corporation's Form S-8 registration statements). Whitley was a substantial factor in the distribution because, as above, writing opinion letters is more than a de minimis act; Whitley did more than perform merely administrative or clerical tasks. *See CMKM Diamonds*, 729 F.3d at 1255.

Finally, the third element is easily met because Blackburn used interstate communication (email) to negotiate the sale to Bushnell.[52]

Whitley contends that he cannot be liable under Section 5 for this distribution because his letter did not cover this issuance specifically but only referred generally to shares issued pursuant to Treaty's employee stock benefit plan. Whitley claims that he was never requested to provide and did not provide any opinion concerning this issuance, and that he had no knowledge or reason to have any knowledge of this issuance. Whitley relies on *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir. 1975), to argue that the SEC must prove that he had knowledge of the Officer Defendants' wrongful purpose in order to be liable. However, *Woodward* was analyzing Exchange Act Rule 10b-5, which has a scienter requirement, *see id.* at 93, whereas Section 5 imposes strict liability, *see Swenson*, 626 F.2d at 424. Further, the examples in *Woodward* of persons who should not be subject to strict liability under the securities laws—a mailman transmitting a fraudulent letter, a company that manufactures the paper on which fraudulent documents are printed, and a bank loaning money to a market manipulator—are the same kinds of people who are

---

[52] (Rec. Doc. 182-19, at 15-16).

excluded by the de minimis test. *See CMKM Diamonds*, 729 F.3d at 1255 (quoting *Murphy*, 626 F.2d at 650) ("For example, a printer may prepare key documents or a bank may advance cash to a customer upon the customer's presentation of an instrument and then pass the instrument to another person. Both would satisfy a 'but for' causation test, but these acts nonetheless do not render the defendants sellers. Before a person's acts can be considered the proximate cause of a sale, his acts must also be a substantial factor in bringing about the transaction."). Item 601 of Regulation S-K specifically requires an attorney opinion letter for registering shares with Form S-8. *See* 17 C.F.R. § 229.601(b)(5). Because of this requirement, courts have held as a matter of law that attorneys who write such opinion letters may be subject to Section 5 liability. *See Ramoil*, 2007 WL 3146943, at *10 ("Because [defendant-attorney's] sign-off was necessary, he is subject to Section 5 liability if the Commission demonstrates all elements of the violation.").

As the SEC has established all the elements of a Section 5 violation against Whitley for Blackburn's sale of S-8 shares to Bushnell and Whitley has not argued that an exemption applies to this distribution, summary judgment will be entered in favor of the SEC and against Whitley on this claim.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the SEC's *Motion for Summary Judgment* **(Rec. Doc. 183)** is **GRANTED** and Defendant Whitley's *Motion for Summary Judgment* **(Rec. Doc. 192)** is **DENIED**.

**IT IS FURTHER ORDERED** that the SEC shall submit a brief to the Court on the appropriate remedies to be imposed against Defendant Whitley as a result of his violations within 21 days of this Order.

New Orleans, Louisiana, this 5th day of February, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE