UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| SECURITIES AND EXCHANGE COMMISSION | CIVIL ACTION |
|---|---|
| VERSUS | No.: 15-2451 |
| RONALD BLACKBURN, ET AL. | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is the Security and Exchange Commission's ("SEC") *Supplemental Motion for Summary Judgment as to Defendant Ronald L. Blackburn* **(Rec. Doc. 232)**. The motion is unopposed by Defendant Blackburn. Considering the motion, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This action arises from alleged violations of securities laws in connection with the operation of Treaty Energy Corp. ("Treaty"), an oil and gas production company incorporated in Nevada and located in New Orleans, Louisiana. The facts of this case are set forth more fully in the Court's earlier opinion granting partial summary judgment in favor of the SEC against Ronald Blackburn, Andrew Reid, Bruce Gwyn, and Michael Mulshine (collectively, the "Officer Defendants"). *See SEC v. Blackburn*, No. 15-2451, 2019 WL 6877655, at *1-9 (E.D. La. Dec. 17, 2019).

In that opinion, the Court found that Defendant Blackburn violated Section 5 of the Securities Act as well as Section 16(a) of the Exchange Act and Rule 16a-3

thereunder. *Id.* at *13, 24. However, the Court found that the SEC failed to present sufficient evidence that Blackburn violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder but allowed the SEC to file a supplemental motion pursuant to Federal Rule of Civil Procedure 56(e)(1). *Id.* at 19. The SEC's supplemental motion is now before the Court.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *accord Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l*

*Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## DISCUSSION

To prove a violation of the Exchange Act's Section 10(b)[1] and the corresponding Rule 10b-5,[2] the SEC is required to show, by a preponderance of the evidence, that Blackburn "(1) made a misstatement or omission (2) of material fact (3) in connection with the purchase or sale of securities (4) with . . . 'a mental state embracing intent

---

[1] Section 10(b) of the Exchange Act makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

[2] Rule 10b-5 makes it unlawful:

> [F]or any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

3

to deceive, manipulate, or defraud.'"[3] *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001)). "[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). A person who lacks such authority may still be found liable under subsections (a) and (c) of Rule 10b-5 for disseminating false or misleading statements with the intent to defraud. *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100-01 (2019).

A misrepresentation or omission is material "if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest," *SEC v. Sethi*, 910 F.3d 198, 206 (5th Cir. 2018), *cert. denied*, No. 19-5113, 2019 WL 4923028 (Oct. 7, 2019) (internal quotation marks and citation omitted), or if there is a substantial likelihood that the misrepresentation "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (citation omitted). Normally, whether an omission is material is resolved by the trier of fact, but when "the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality,'" summary judgment may be appropriate. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (citation omitted).

---

[3] "The scope of liability under Section 10(b) and Rule 10b-5 is the same." *SEC v. Sethi*, 910 F.3d 198, 206 n.4 (5th Cir. 2018), *cert. denied*, No. 19-5113, 2019 WL 4923028 (Oct. 7, 2019).

When considering the third element, "the Supreme Court has 'espoused a broad interpretation' of the phrase 'in connection with' in the context of Section 10(b) and Rule 10b-5." *SEC v. Wey,* 246 F. Supp. 3d 894, 913 (S.D.N.Y. Mar. 27, 2017) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else.")).

The last element is the scienter requirement. Scienter is demonstrated when a party acts with severe recklessness or an intent to deceive. *SEC v. Seghers,* 298 F. App'x 319, 333 (5th Cir. 2008) (citing *Nathenson*, 267 F.3d at 408).[4] When scienter is at issue, courts rarely grant summary judgment because of the element's subjective nature. *See* Thomas Lee Hazen, *Treatise on the Law of Securities Regulation*, § 12:52 (2019) (collecting cases). Nevertheless, courts may find scienter as a matter of law where the defendant's recklessness with the truth is obvious from the facts and the defendant has failed to set forth any contrary evidence as to his state of mind. *See Sethi*, 910 F.3d at 207-08 & n.5.

"Claims under Section 17(a) of the Securities Act have essentially the same elements as those under Exchange Act Section 10(b) and Rule 10b–5."[5] *SEC v.*

---

[4] In *Seghers*, the Fifth Circuit also noted that, in proving scienter, "'[t]he party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information.'" *Seghers*, 298 F. App'x at 327 (citation omitted). Severe recklessness is "'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Nathenson*, 267 F.3d at 408 (citation omitted).

[5] Section 17(a) of the Securities Act makes it unlawful:

    (1)    to employ any device, scheme, or artifice to defraud, or

*Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 510 (S.D.N.Y. 2018). "However, the mens rea elements of Section 17(a)'s three subsections differ. Claims brought under Section 17(a)(1) require proof of scienter, while claims brought under Sections 17(a)(2) or (3) only require proof of negligence." *Id.*; *see also Sethi*, 910 F.3d at 206.

The SEC contends Blackburn violated Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) because he "drafted, and was responsible for the dissemination of, Treaty's press releases touting and confirming the false claims that Treaty had struck oil in Belize."[6] The SEC also contends that Blackburn violated Rule 10b-5(b) and Section 17(a)(2) under *Janus Capital Group* because he had ultimate authority over the false press releases. The SEC further contends that Blackburn violated these provisions by making material misrepresentations and omissions to one of Treaty's investors, Chris Ezell.

## I. THE FALSE PRESS RELEASES

The Court previously found that Defendant Reid violated Section 17(a)(2)–(3) by negligently misrepresenting that Treaty had struck oil in Belize in a press release (the "Belize Announcement") and that Defendant Mulshine violated Section 10(b), Rule 10b-5, and Section 17(a) by acting with severe recklessness in continuing to assert that Treaty had struck oil in Belize after the Government of Belize had

---

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q.
[6] (Rec. Doc. 232, at 4).

contradicted their claims.[7] The SEC now contends that Blackburn should be found liable under Section 10(b), Rule 10b-5, and Section 17(a) because he had ultimate authority over the Belize Announcement and the follow-up press release issued by Treaty after the Government of Belize publicly refuted their claims (the "Second Belize Announcement").

The Court previously found that Reid had ultimate authority over the Belize Announcement[8] and declines to hold that more than one person may hold ultimate authority for a statement such that more than one person can be considered its "maker" in the absence of any argument from the SEC on this point.[9] *See Janus Capital Grp.*, 564 U.S. at 142-43 (discussing "the maker of a statement [as] the person or entity with ultimate authority over the statement" in the singular).

However, the Court finds that the SEC has established a prima facie case that Blackburn violated Section 10(b), Rule 10b-5, and Section 17(a) because he had ultimate authority over the Second Belize Announcement. Following Treaty's release of the Belize Announcement[10] and the rebuke by the Government of Belize,[11] the Officer Defendants sought to contain the Government of Belize's release and minimize its impact on Treaty's share price. To that end, the Officer Defendants began drafting a press release. Blackburn then sent out an email with the following:

> This should be the final version. You can prepare this as a news release for 6:30am tomorrow. It should be released by Stephen York President and coo [sic] of Treaty. His entire statements cannot be altered in any

---

[7] (Rec. Doc. 227, at 42-45).
[8] *Id.* at 45.
[9] The Court is also not convinced that the SEC has presented sufficient evidence of Blackburn's scienter as to the Belize Announcement to support liability under Rule 10b-5.
[10] (Treaty 1.30.12 Press Release, Rec. Doc. 182-19, at 39-40).
[11] (Government of Belize Press Release 1.31.12, Rec. Doc. 182-19, at 43).

7

way with the exception of correcting spelling errors. Please place quotation marks around entire statement by Steve. This should be put out only as further clarification of our prior releases and in no way to be construed as any thing other than planned additional information. Please give this a urgent [sic] priority to get this done at a reasonable hour tonight. I think that this will offset many things negative and we will deal with the [Belize] government tomorrow.[12]

The Second Belize Announcement was released the next day, with the title "Treaty Energy Provides Confirmation of its Belize Oil Find" and the subheading "Company has Further Reviewed its Findings and Confirms its Discovery of Oil on the Stann Creek Field in Southern Belize."[13] When asked about the Second Belize Announcement, Blackburn explained that "it was planned additional information to the news release where we said we had an oil strike. We were standing behind that."[14]

Thus, Blackburn was the maker of the Second Belize Announcement because he had ultimate authority over it. *See Janus Capital Grp.*, 564 U.S. at 142. His email shows that he controlled its content and when and how it would be communicated to others. The statement was a misrepresentation because Treaty had not discovered oil in Belize and therefore had no discovery to confirm.[15] This misrepresentation was material because any reasonable investor would consider whether an oil company had actually struck oil important in making a decision to invest. The misrepresentation was made in connection with the sale of securities: it was intended to stop the decline in Treaty's stock price caused by the Government of Belize's release

---

[12] (Rec. Doc. 232-1, at 16).
[13] (Treaty Press Release 2.1.12, Rec. Doc. 182-19, at 48).
[14] (Blackburn Tr., Rec. Doc. 232-1, at 13).
[15] (Reid Tr., Rec. Doc. 182-11, at 76).

8

disputing Treaty's claims, which it did.[16] Finally, Blackburn made the misrepresentation with scienter because he knew or was severely recklessness with the fact that Treaty had not struck oil, considering the Government of Belize's release. Indeed, the Government of Belize described what Treaty found as "only minute traces of tar."[17]

Blackburn has not opposed the SEC's instant motion. Accordingly, in light of the foregoing, the SEC is entitled to summary judgment on its claim that Blackburn violated Section 10(b), Rule 10b-5, and Section 17(a).

## II. CHRIS EZZELL

The Court previously found that Reid violated Section 10(b), Rule 10b-5, and Section 17(a) by making misrepresentations to Chris Ezzell to convince him to buy Treaty stock and to not sell it after Ezzell learned that Treaty was being investigated by the SEC.[18] Ezzell also testified to the following:

> Sometime during the summer of 2012, I met Ronald Blackburn at a pool party at Reid's house. I spoke with Blackburn and Reid about [Treaty] at that time. Blackburn told me that they had investors coming in from Taiwan and Malaysia and said "it's going to be huge." Blackburn said that [Treaty] had signed a contract with Princess Petroleum in Belize, and that they would soon be pumping oil. He told me that geologists had estimated that [Treaty] would recover 6.5 million barrels of oil from the Belize field. Based on our conversations, I thought that Blackburn was in charge of [Treaty]. Her certainly seemed to be Reid's boss. I never heard any negative news about Belize from Reid or Blackburn.[19]

---

[16] (Mulshine Tr., Rec. Doc. 182-11, at 34; Hunter Decl., Rec. Doc. 182-8, at 19-20).
[17] (Government of Belize Press Release 1.31.12, Rec. Doc. 182-19, at 43) (capitalization removed).
[18] (Rec. Doc. 227, at 49-50).
[19] (Ezzell Decl., Rec. Doc. 182-5, at 6).

9

Blackburn's statements that Treaty would soon be pumping oil and that geologists estimated that it would recover 6.5 million barrels of oil were misrepresentations because there was no evidence of such; Treaty never found oil in Belize. Additionally, Blackburn omitted the fact that the Government of Belize had refuted Treaty's claims that it struck oil. His misrepresentations and omissions were material because they would be viewed by reasonable investors as significantly altering the total mix of information made available because they pertained to one of Treaty's primary business ventures. They were made in connection with the purchase or sale of securities because Ezzell was already a Treaty shareholder at the time and repeatedly considered selling his Treaty stock but was persuaded to not sell.[20] Finally, Blackburn made these misrepresentations and omissions with scienter because he knew or was severely reckless with the fact that Treaty had not struck oil, considering that these statements were made several months after the Government of Belize publicly refuted Treaty's claims. Therefore, the SEC is entitled to summary judgment on its claim that Blackburn violated Section 10(b), Rule 10b-5, and Section 17(a) by making misrepresentations to Chris Ezzell.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the SEC's *Supplemental Motion for Summary Judgment as to Defendant Ronald L. Blackburn* **(Rec. Doc. 232)** is **GRANTED**.

---

[20] *Id.* at 5-7.

New Orleans, Louisiana, this 10th day of March, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE