UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | CIVIL ACTION |
| VERSUS | No.: 15-2451 |
| RONALD L. BLACKBURN, ET AL. | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court are the Security and Exchange Commission's ("SEC") *Motion for Remedies as to Treaty and the Officer Defendants* **(Rec. Doc. 235)** and its *Motion for Remedies as to Defendant Samuel E. Whitley* **(Rec. Doc. 250)**. The motions are opposed (Rec. Docs. 251–54). Considering the motions and memoranda, the record, and the applicable law, the Court finds that the Motion for Remedies as to Treaty and the Officer Defendants should be **GRANTED** and the Motion for Remedies as to Defendant Samuel E. Whitley should be **GRANTED in part** as set forth herein.

## FACTS AND PROCEDURAL BACKGROUND

This action arises from alleged violations of securities laws in connection with the operation of Treaty Energy Corp. ("Treaty"), an oil and gas production company incorporated in Nevada and located in New Orleans, Louisiana. The facts of this case are set forth more fully in the Court's earlier opinion granting partial summary judgment in favor of the SEC against Defendants Ronald Blackburn, Andrew Reid, Bruce Gwyn, and Michael Mulshine (collectively, the "Officer Defendants"). *See SEC v. Blackburn*, No. 15-2451, 2019 WL 6877655, at *1-9 (E.D. La. Dec. 17, 2019).

The Court previously granted summary judgment to the SEC on the following claims:

- Blackburn violated Section 5 of the Securities Act; Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5; and Section 16(a) of the Exchange Act and Rule 16a-3.

- Reid violated Section 5 of the Securities Act; Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5; and Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-14.

- Gwyn violated Section 5 of the Securities Act; Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5; and Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-14.

- Mulshine violated Section 5 of the Securities Act; and Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

- Defendant Samuel E. Whitley violated Section 5 of the Securities Act.

Additionally, the Court entered an Agreed Partial Judgment as to Treaty that enjoined Treaty from violating Section 10(b) of the Exchange Act and Rule 10b-5, Section 17(a) of the Securities Act, Section 5 of the Securities Act, and Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13. The Agreed Partial Judgment also provided that the Court "shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty" against Treaty.[1]

The SEC now seeks to impose permanent injunctions against the Officer Defendants and Whitley as well as disgorgement orders and civil penalties on each Defendant.[2] Additionally, the SEC seeks officer-and-director and penny-stock bars against the Officer Defendants and a penny-stock bar against Whitley.

---

[1] (Rec. Doc. 157, at 5).
[2] The SEC also brought claims in this action against Lee Schlesinger, who settled the claims against him. (Rec. Doc. 207). The Court's use of "each" or "all Defendants" in this opinion does not include Schlesinger.

## PARTIES' ARGUMENTS

The SEC asserts that permanent injunctions are warranted because of the egregious and repeated nature of the Defendants' conduct and their lack of recognition of their wrongdoing. The SEC requests a conduct-based injunction against Whitley because otherwise, it contends, his disregard of the registration requirements is likely to be repeated. It seeks disgorgement of the Officer Defendants' ill-gotten gains, the net total of illicit proceeds received by Treaty, and all the legal fees Whitley received from Treaty. The SEC also contends maximum third-tier civil penalties are appropriate against each of the Defendants.

All the Defendants oppose the SEC's motions on grounds that it lacks authority to seek disgorgement in civil enforcement proceedings. Treaty does not otherwise oppose the SEC's requested relief. Blackburn and Mulshine do not discuss any of the SEC's proposed remedies but merely seek to relitigate the issue of liability. Gwyn, acting pro se, filed a memorandum in which he contends that a third-tier civil penalty should not apply to him because there is no evidence that he committed fraud that resulted in substantial losses to investors. Reid has not filed a response.

Whitley contends that injunctive relief and a penny stock bar against him are not warranted because the Court did not find that he participated in any fraud, the claims against him did not require a showing of scienter, and the SEC has not offered any positive proof that he is likely to engage in future violations. He disputes the SEC's proposed disgorgement amount, contending that the Court can only order him to disgorge his profits from the letters that were proven to violate the Securities Act,

not all of the legal fees he received from Treaty. As to civil penalties, he asserts that the Court can only impose first-tier penalties against him because the SEC did not establish he acted with scienter in proving its claims against him.

## DISCUSSION

### I. PERMANENT INJUNCTION

Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act authorize the Court to enter a permanent injunction against a defendant when the SEC establishes a "reasonable likelihood" that the defendant will engage in a future violation of the securities laws. *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981); *see* 15 U.S.C. §§ 77t(b), 78u(d). In determining whether to impose an injunction, the Court considers the following factors: (1) the egregiousness of the defendant's conduct; (2) the isolated or recurrent nature of the violation; (3) the defendant's degree of scienter; (4) the sincerity of the defendant's recognition of his transgression; and (5) the likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009).

#### A. The Officer Defendants

The SEC contends that permanent injunctions are warranted against the Officer Defendants because their conduct was particularly egregious, occurred over several years, and displayed a high degree of scienter, and they have shown no recognition of their wrongdoing. Additionally, Blackburn was accused of misappropriating funds from the previous firm he consulted for and settled the claim against him for $1.3 million, and Gwyn was criminally prosecuted for securities fraud

4

in Alabama for misleading investors of a futures firm he was operating while he was a director of Treaty. The Officer Defendants do not oppose the requests for injunctions. Accordingly, the Court will permanently enjoin the Officer Defendants from committing future violations of the respective securities laws they have violated.

B. **Whitley**

The SEC seeks a permanent injunction against Whitley for future violations of Section 5(a) and (c) of the Securities Act and a conduct-based injunction prohibiting him from offering legal services in connection with the offer or sale of securities claiming any exemption from registration and the filing of a Form S-8. Whitley contends that the SEC has not carried its burden of showing that an injunction is appropriate against him and that its requested injunction is overbroad. He submits that if the Court finds an injunction is necessary, that it be narrowly tailored to the violations the Court found he committed and limited to a period of five years.

The Court finds that the SEC has not shown a reasonable likelihood that Whitley will commit a future securities law violation. The mere fact of a prior violation is not enough. *See Gann*, 565 F.3d at 940. First, Whitley assisted Treaty and the Officer Defendants in committing technical violations of reporting requirements; unlike the Officer Defendants, he did not commit blatant fraud. Second, his violations were isolated rather than repeated: of the 105 opinion letters Whitley authored for Treaty, the SEC only established violations for four of them, and Whitley has no other history of violations. Third, while the SEC contends that Whitley's actions show severe recklessness, he was only shown to have violated Section 5, a strict liability

statute with no scienter requirement. Fourth, Whitley has shown some sincerity in his recognition of wrongdoing. Although it is difficult to discern sincerity from a written affidavit, the Court finds his willingness to be subjected to an injunction noteworthy. Finally, although Whitley's job as an attorney provides opportunities for future violations, he attests that since this case began, he has prepared no S-8 registration statements or opinion letters and at most two Rule 144 opinion letters (but not for any Treaty shareholders), which shows a voluntary cessation of his violative conduct. The Court finds that this factor alone is insufficient to support a permanent injunction against Whitley. Accordingly, the Court declines to impose a permanent injunction.

## II. DISGORGEMENT

The Court has broad discretion to award disgorgement and the amount of any award. *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993). The purpose of this remedy is to deprive wrongdoers of their ill-gotten gains. *Id.* at 75. A defendant may be liable for disgorgement equal to "a reasonable approximation of the proceeds causally connected to the wrongdoing." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007). The Court, in its discretion, may also award prejudgment interest on any disgorgement amount. *SEC v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015). In calculating disgorgement, any risk of uncertainty "should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (quoting *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995)). "[T]he overwhelming weight of authority hold[s] that securities law violators

6

may not offset their disgorgement liability with business expenses." *SEC v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) (alterations in original) (citation omitted).

The Defendants first argue that the SEC lacks authority to seek disgorgement in civil enforcement proceedings, relying on *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). In *Kokesh*, the Supreme Court held that a five-year statute of limitations applied to claims for disgorgement for violating federal securities laws because disgorgement is a "penalty" within the meaning of 28 U.S.C. § 2462. 137 S. Ct. at 1639. The Court explicitly stated that it was not deciding "whether courts possess authority to order disgorgement in SEC enforcement proceedings." *Id.* at 1642 n.3. Following *Kokesh*, this question was raised in *SEC v. Liu*, 754 F. App'x 505 (9th Cir. 2018), *cert. granted*, 140 S. Ct. 451 (2019). Like the petitioners in *Liu*, Defendants argue that, under *Kokesh*, disgorgement is a legal rather than equitable remedy. Because of this, Defendants contend that the SEC lacks statutory authority to seek disgorgement in judicial proceedings (as opposed to administrative proceedings). Defendants also reurge their request to stay the remedies proceedings until the Supreme Court decides *Liu* and resolves this issue.

No court has held that the SEC lacks authority to order disgorgement in civil proceedings; the Fifth Circuit recently rejected Defendants' argument in *SEC v. Team Resources Inc.*, 942 F.3d 272, 275-77 (5th Cir. 2019), *petition for cert. filed*, No. 19-978 (Feb. 3, 2020). Considering this binding precedent, which is uniform across the circuits, the Court concludes that a stay is also unwarranted at this late stage of this litigation.

7

### A. Treaty and the Officer Defendants

The SEC seeks disgorgement, plus prejudgment interest, from Treaty and the Officer Defendants in the following amounts:

|  | **Disgorgement** | **Prejudgment Interest** | **Total** |
|---|---|---|---|
| Blackburn | $1,512,059.96 | $359,099.64 | $1,871,159.60 |
| Reid | $525,030.52 | $124,689.69 | $649,720.21 |
| Mulshine | $108,291.05 | $25,718.10 | $134,009.15 |
| Gwyn | $772,434.90 | $183,445.85 | $955,880.75 |
| Treaty | $2,270,561.60 | $539,236.47 | $2,809,798.07 |

Treaty and the Officer Defendants do not contest the proposed disgorgement amounts. Because the Court concludes that these amounts are supported by sufficient evidence,[3] the Court will grant the SEC's requested disgorgement as to these Defendants.

### B. Whitley

The SEC asserts that a reasonable disgorgement amount for Whitley is the total amount of legal fees he received in connection with his work for Treaty, which is $54,852.67, plus $13,026.97 in prejudgment interest. Whitley contends this amount is unreasonable because most of it was for other services he provided Treaty that did not form the basis of the SEC's claims against him. Instead, Whitley claims that a reasonable amount would be the fees he received for the four opinion letters that the SEC has shown violated Section 5. He asserts that these amounts are: (1) $300 for the February 14, 2013 letter that allowed Blackburn to sell his unregistered shares;

---

[3] (Rec. Doc. 235-1, at 2-5; Rec. Docs. 235-2, 235-3).

(2) $500 for the October 10, 2011 letter that allowed David V. Smith to resell the S-8 shares he improperly received; and (3) $3,000 for each of Treaty's Form S-8 registration statements for 2012 and 2013, of which he asserts approximately $500 is attributable to the opinion letter. Thus, Whitley contends that a reasonable amount for disgorgement is $1,800 or, at the most, $6,800.

Because disgorgement is an equitable remedy, the Court concludes that disgorgement of fees not shown to be the profits of wrongdoing would be improper. *See SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). Accordingly, the Court will order Whitley to disgorge the $6,800 he received in connection with the four opinion letters. Additionally, because the SEC has not provided the Court with a reasonable sum of prejudgment interest connected to this amount, no prejudgment interest will be awarded; however, the Court will keep the lack of prejudgment interest in mind when setting a civil penalty.

### III. CIVIL PENALTIES

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the Court to assess civil monetary penalties for securities violations based on an escalating, three-tier structure. 15 U.S.C. §§ 77t(d), 78u(d)(3). A first-tier penalty may be imposed for any securities violation; no showing of scienter is required. *Id*. Second-tier penalties may be awarded upon a showing that the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id*. Finally, a third-tier penalty may be imposed if a second-tier penalty may apply and the "violation directly or indirectly result[ed] in

9

substantial losses or create[d] a significant risk of substantial losses to other persons." *Id.* The maximum penalty that can be awarded is the greater of the amount set by statute or "the gross amount of pecuniary gain to [the] defendant as a result of the violation." *Id.* For the relevant time period, the maximum penalty amounts are:

|  | **Natural Person** | **Any Other Person** |
| --- | --- | --- |
| First Tier | $7,500 | $75,000 |
| Second Tier | $75,000 | $375,000 |
| Third Tier | $150,000 | $725,000 |

17 C.F.R. § 201.1001, Table 1. The amount of civil penalties to assess within the permissible statutory range is left to the Court's discretion. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005). In determining the appropriate penalty, the Court considers:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 623 (W.D. Tex. 2014).

### A. Treaty and the Officer Defendants

The SEC seeks maximum third-tier penalties against Treaty and the Officer Defendants. Gwyn contends that a third-tier penalty against him is unwarranted because there is no evidence that his violations resulted in substantial losses to investors. However, in addition to making a material misrepresentation to a Treaty investor, the Court found that Gwyn committed fraud by failing to disclose Blackburn's involvement with Treaty on a required filing with the SEC. Had

10

Blackburn's involvement been disclosed earlier, substantial losses could have been avoided, including by the SEC taking enforcement action sooner. Accordingly, the Court finds a third-tier penalty is warranted against Gwyn because his violations created a significant risk of substantial losses to other persons. The Court will impose civil penalties against Treaty and the Officer Defendants in the following amounts: $1,512,059.96 against Blackburn; $525,030.52 against Reid; $150,000 against Mulshine; $772,434.90 against Gwyn; and $2,270,561.60 against Treaty.

### B. Whitley

The SEC also seeks maximum third-tier penalties against Whitley because his conduct involved reckless disregard of a regulatory requirement and created a significant risk of substantial losses to others. The Court is not convinced that the SEC has presented sufficient evidence of Whitley's state of mind, which is typically a question of fact not appropriate for resolution on summary judgment. Accordingly, the Court will impose a first-tier penalty on Whitley. Because the SEC proved that four of Whitley's opinion letters violated Section 5, the Court finds that Whitley committed four violations and will impose a penalty of $7,500 per violation, for a total of $30,000. *See SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 288 n.7 (2d Cir. 2013); *see also, e.g.*, *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 1959843, at *9 (N.D. Tex. May 5, 2008) (finding that each fraudulently obtained payment constituted a separate violation of the securities laws and imposing a $2,000 penalty per violation, for a total penalty of $1,178,000 based on 589 violations).

### IV. OFFICER-AND-DIRECTOR AND PENNY-STOCK BARS

Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act authorize the Court to permanently or temporarily prohibit a person who has violated scienter-based anti-fraud provisions of the Securities Act or Exchange Act from acting as an officer or director of an issuer "if the person's conduct demonstrates unfitness to serve as an officer or director." 15 U.S.C. §§ 77t(e), 78u(d)(2).

Section 20(g)(1) of the Securities Act and Section 21(d)(6)(A) of the Exchange Act authorize the Court to permanently or temporarily prohibit a person who was participating in an offering of penny stock at the time of alleged misconduct from participating in any future offering of penny stock. 15 U.S.C. §§ 77t(g), 78u(d)(6)(A).

The Court considers the following factors in determining whether an officer-and-director or penny-stock bar is appropriate: (1) the egregiousness of the defendant's actions; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances against future violations; (5) the defendant's recognition of the wrongful nature of the conduct; and (6) the likelihood that the defendant's conduct will present opportunities for future violations." *Kahlon*, 873 F.3d at 506. These factors are substantially similar to the factors for determining whether a permanent injunction is warranted. *See id*. Two additional factors that may be useful in determining whether an officer-and-director bar is appropriate are the defendant's role when he engaged in the fraud and the defendant's economic stake in the violation. *Id*. at 507.

### A. Treaty and the Officer Defendants

The SEC seeks officer-and-director and penny-stock bars against the Officer Defendants and a penny-stock bar against Treaty. In addition to the reasons given above for imposing permanent injunctions, the Court notes that none of the Officer Defendants have provided any recognition of the wrongful nature of their conduct or any assurances against future violations. Blackburn and Mulshine's brief attempts to relitigate their liability, claiming in conclusory fashion that they committed no violation of Section 5, Section 17(a), Section 10(b) or Rule 10b-5. Gwyn, who filed a brief pro se, attempts to shift the blame to Blackburn and contends he did not make the statement that the Court found to be a material misrepresentation to a Treaty investor. Further, Mulshine, Reid, and Gwyn all held officer or director positions at various times while at Treaty: Mulshine was assistant secretary and corporate secretary; Reid was CEO and chairman of the board of directors; and Gwyn was co-CEO, COO, and member of the board of directors. While Blackburn was never a formal officer or director, the high degree of control he exercised over Treaty informally as well as his economic stake in the violations – over $1.5 million – support imposing these prohibitions against him. Finally, a penny-stock bar is warranted against Treaty because it engaged in fraud over several years intended to inflate the price of its penny stock and increase demand.

**B. Whitley**

The SEC also seeks a penny-stock bar against Whitley, relying primarily on the fact that he is a securities attorney and so should have known that his conduct was illegal. Considering the Court's analysis above, including his recognition of

wrongdoing and his voluntary cessation of activities that are similar to his misconduct here, the Court concludes that a penny-stock bar against Whitley is not warranted; the Court believes that the financial penalties imposed herein will serve as a sufficient deterrent.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the SEC's *Motion for Remedies as to Treaty and the Officer Defendants* **(Rec. Doc. 235)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the SEC's *Motion for Remedies as to Defendant Samuel E. Whitley* **(Rec. Doc. 250)** is **GRANTED in part** and **DENIED in part**. The SEC's requests for disgorgement and a civil penalty are **GRANTED**, and its requests for a permanent injunction and penny-stock bar are **DENIED**.

New Orleans, Louisiana, this 8th day of April, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE